HERBERT MITCHELL AND JOHN J. MONIGAN, Jr., RE-
CEIVER, PLAINTIFFS-APPELLANTS, v. ALFRED HOF-
MANN, INC., A CORPORATION, AND ALFRED HOF-
MANN & CO., A CORPORATION, DEFENDANTS-RE-
SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 25, 1957—Decided January 15, 1958.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Melvin P. Antell* argued the cause for plaintiffs-appellants (*Messrs. Lorentz & Stamler,* attorneys).

*Mr. Morrill J. Cole* argued the cause for defendants-respondents (*Messrs. Cole, Morrill & Berman,* attorneys).

The opinion of the court was delivered by
FREUND, J. A. D. Plaintiffs appeal from an order denying their application to compel defendants to resume arbitration of controversies between Herbert Mitchell and the defendants and from an order denying plaintiffs' motion for a new trial or, in the alternative, to reopen the judgment to consider further affidavits and grant the order of arbitration sought. The first order, which had the effect of a final judgment, was entered in the Superior Court, Law Division, after a trial on the pleadings, affidavits and exhibits pursuant to *R. R.* 4:85–1 *et seq.*

The primary plaintiff is Mitchell, and plaintiff Monigan joins in the proceedings only insofar as his participation as Mitchell's appointed receiver is necessary to effect full and complete relief. Hereinafter "plaintiff" refers to Mitchell.

For the purposes of this proceeding the material facts are not in dispute. The issue is whether the plaintiff, by his failure to prosecute arbitration proceedings which had been

instituted by him, has lost the right to arbitration by reason of laches or waiver.

On February 2, 1942 Herbert Mitchell was employed by the defendants as a non-exclusive sales representative and was to receive a commission of 10% of the net sales price of any orders or re-orders resulting from his solicitations. The letter agreement between the parties expressly provided that:

"any dispute or difference of any character which may arise between us will be settled and determined by arbitration in accordance with the Arbitration Laws of the State of New Jersey."

A dispute arose concerning commissions and on October 8, 1945 the parties entered into a stipulation for arbitration which, among other things, provided as follows:

"(1) All matters in dispute between the parties will be submitted to arbitration in these proceedings.

(2) The respective parties will accept any and all decisions, rulings or awards of the Board of Arbitrators in these proceedings as final and binding upon them for all purposes, and will abide by the final decision of the Board of Arbitrators to the same and like extent as though it were a final judgment in a court of last resort on appeal."

The arbitration stipulation provided for the selection of arbitrators, procedures and the filing of pleadings and discovery in order to develop the issues to be submitted to arbitration.

No time limitation was fixed within which either party was obligated to demand arbitration or, if begun, within which it had to be completed.

To plaintiff's complaint, defendants filed a counterclaim alleging that plaintiff had been overpaid $54,806. After issues were joined, a board composed of three arbitrators, Robert D. Grosman, nominated by plaintiff, David L. Cole, nominated by defendants, and Augustus C. Studer, selected by Grosman and Cole, conducted hearings in 1946. The last actual hearing was held on December 26, 1946, when hearings were adjourned without date due to other com-

mitments of counsel. Nevertheless, the matter did not lie dormant nor were the litigants entirely inactive in the long interval between the date of the last hearing and the institution on March 15, 1957 of this proceeding, by which plaintiff seeks to compel a resumption of the arbitration hearings.

The trial judge sustained defendants' contention of laches or waiver on the part of plaintiff. We allude to such facts as appear to us material to indicate that the plaintiff did not waive his right to arbitration and that the doctrine of laches ought not to have been invoked to terminate the pending proceeding.

We have concluded that the delay in resuming hearings is to be deplored but that it cannot be attributed to the plaintiff alone. Indeed, we find that defendants by their conduct and acts acquiesced in most of the delay. Both parties were dilatory. Mitchell seems to have had particular difficulty with his counsel. Since the institution of the arbitration proceeding, plaintiff has had five sets of counsel and the defendants three successive counsel. Mitchell's trouble with one of his counsel are related *infra*.

With the exception of the period between June 1952 and April 1955, since the date of the last hearing (December 26, 1946) there were dealings of one kind or another between the parties directly or indirectly pertaining to the arbitration, and it was not until about May 3, 1956 that defendants' counsel for the first time definitely apprised plaintiff's then counsel that they could not "consent to the reinstitution of the proceedings," and even in that communication they stated: "We shall be pleased to discuss this matter with you at your convenience." In a previous letter, dated April 2, 1956, they said that "Mitchell had practically abandoned his right to press the arbitration," but it was not until the May 3 letter that they squarely took a definite position. Until that time, plaintiff had constantly been endeavoring to resume arbitration hearings.

Subsequent to the 1946 hearings the parties stipulated that the arbitrators were to appoint a disinterested certified

public accountant to audit accounts pertaining to 32 of the defendants' customers. The report of the audit of one of those accounts is dated October 28, 1947. The other accounts were never audited.

In January 1948 plaintiff had some disagreement with his attorneys. They resigned in October 1948, demanding a fee of $10,000, which plaintiff disputed. They refused to give a substitution or to surrender any papers, because of nonpayment of fees, and instituted suit against him, and in May 1951 they obtained a judgment against Mitchell in excess of $6,700. In November 1951 they secured the appointment of the plaintiff John J. Monigan as receiver of Mitchell's rights and credits due from defendants. He and Mitchell endeavored to resume hearings. The arbitrators tentatively fixed March 19, 1952 for the resumption of hearings, but defendants' counsel by letter advised that they would be unable to proceed until the following September because of other court commitments. Tentative hearing dates, however, were again set for May and June 1952 but were adjourned by defendants, this time to allow them to institute proceedings to remove the receiver. On June 25, 1952 this application was denied.

From that time until about April 1955 plaintiff states he consulted many lawyers in his endeavor to engage other counsel, and "considerable time passed" because of the length of time it took for counsel to familiarize themselves with the voluminous papers and because of his indebtedness to his prior counsel, the subsequent judgment they held against him, and the existence of a receiver. In April 1955 correspondence and conferences between counsel resumed and continued until the definitive rejection by the defendants in May 1956.

During the same interval defendants also engaged new counsel and these sought adjournments and postponements in order to familiarize themselves with the matter or because of other engagements. For instance, in January 1947 defendants changed to other attorneys and they requested adjournments; they were substituted by other counsel in

April 1955 and succeeding counsel again required additional time to examine the voluminous file. Thereafter they negotiated and corresponded for almost a year regarding resumption of arbitration before appraising plaintiff's attorneys of their claim of laches.

The foregoing is a somewhat sketchy summary of the extended dealings between the parties. We are satisfied from the entire record that both parties were responsible for and contributed to the prolongation of the proceedings.

We regard the delays attributable to plaintiff, under the circumstances, as explained and excusable, but even if they were not, defendants have not shown that their own freedom from fault entitles them to raise the defense of laches or waiver by plaintiff.

██ Defendants' contributions to and acquiescence in the delays preclude them from now complaining. *Vliet v. Cowenhoven,* 83 *N. J. Eq.* 234, 238 (*Ch.* 1914). When both parties are at fault, neither can assert laches against the other. 30 *C. J. S. Equity* § 114, *p.* 526; 19 *Am. Jur., Equity,* § 490, *p.* 339.

 To constitute a valid defense of laches, the delay must not only be unexplained and inexcusable, but must have visited prejudice upon the party asserting the delay. *Stroebel v. Jefferson Trucking & Rigging Co.,* 125 *N. J. L.* 484, 487 (*E. & A.* 1940); *Montclair Trust Co. v. Star Co.,* 139 *N. J. Eq.* 211 (*Ch.* 1947), affirmed 141 *N. J. Eq.* 263, 265 (*E. & A.* 1948); *Riverton Country Club v. Thomas,* 141 *N. J. Eq.* 435, 448 (*Ch.* 1948), affirmed 1 *N. J.* 508 (1948); *Markey v. City of Bayonne,* 24 *N. J. Super.* 105, 118 (*App. Div.* 1952).

"Laches in legal significance, is not merely delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right." 2 *Pomeroy's Equity Jurisprudence, pp.* 177–179,

sec. 419*d*. (5*th ed.* 1941). And see *Nortuna Shipping Co. v. Isbrandtsen Co.*, 231 *F.* 2*d* 528 (2 *Cir.* 1956), *certiorari* denied 351 *U. S.* 964, 76 *S. Ct.* 1028, 100 *L. Ed.* 1484; *Annotation, "Arbitration-Limitations-Laches,"* 37 *A. L. R.* 2*d* 1127 (1954).

It may be true that plaintiff caused the greater part of the delay because of the trouble he was having with his attorneys, but the fact is that defendants never once requested him to proceed nor did they ever inform him that they would insist upon prompt action in the future. If they considered themselves aggrieved by the delay, they were free to seek relief under *N. J. S.* 2*A*:24–3 which provides:

"Where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, the superior court, or the county court of the county where either party resides, may in a summary action direct that the arbitration proceed in the manner provided for in the agreement. The party alleged to be in default may demand a jury trial as to the issue that there has been no agreement in writing for an arbitration or that there has been no failure to comply therewith."

This statute is available to both parties to an arbitration agreement. Defendants might also have moved before the arbitrators for a dismissal of the proceedings. Instead, they chose to adopt a policy of inaction, thus contributing to the delay and helping to create the situation of which they now complain.

There has been no showing of prejudice here. Defendants assert as prejudicial the unavailability of the testimony of an employee who died in 1950 and who, they say, was "in a position to know" the "facts." There is no proof as to the nature of those facts, or of their materiality, or whether the same facts cannot be established through other testimony or evidence. We note, further, that this suggestion of prejudice was not advanced until the present application, seven years after the employee's death and after several adjourned dates for the resumption of arbitration and extended correspondence between the parties. In any event, where defendants have substantially contributed to the delay, they should not be heard to complain of loss of evidence.

Defendants' claim of waiver is equally without merit. Waiver is the voluntary relinquishment of a known right evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based. *Aron v. Rialto Realty Co.,* 100 *N. J. Eq.* 513, 517 (*Ch.* 1927), affirmed 102 *N. J. Eq.* 331 (*E. & A.* 1928). The cases relied on by defendants are all examples of the pursuit by a party of an affirmative course of action, typically resort to judicial relief, inconsistent with any intention to pursue the arbitration remedy. See, *e. g. McKeeby v. Arthur,* 7 *N. J.* 174, 182 (1951). Here plaintiff at most has been dilatory and, unlike the parties in *McKeeby v. Arthur,* the plaintiff's acts have never unequivocally evidenced an intention to abandon the arbitration proceedings.

Defendants argue similarly that the plaintiff's demand for arbitration is barred by the statute of limitation, *N. J. S.* 2*A*:14–1, for the reason that the "cause of action" accrued to Mitchell in 1946 when the dispute arose and he demanded arbitration. There is no merit to this argument. It has been held in *Reconstruction Finance Corp. v. Harrison & Crossfield,* 204 *F.* 2*d* 366, 37 *A. L. R.* 2*d* 1117 (2 *Cir.* 1953), that the cause of action for breach of the obligation to arbitrate does not accrue until the plaintiff requests arbitration and the defendant refuses to comply. Since the defendants herein notified plaintiff for the first time in May 1956 that they would not proceed with arbitration, the period of limitation did not begin to run until then.

Furthermore, the defendants will not now be heard to raise the statute of limitation as a bar to arbitration as it was not raised below as an affirmative defense. *R. R.* 4:8–3; *R. R.* 4:12–8; *Waldor v. Untermann,* 10 *N. J. Super.* 188, 193 (*App. Div.* 1950); *M. N. Axinn Co. v. Gibraltar Development, Inc.,* 45 *N. J. Super.* 523, 536 (*App. Div.* 1957). *Cf. R. R.* 1:7–1(*c*).

It is well settled that submission to arbitration is essentially a contract and that the parties are bound to the extent of their contract. *Goerke Kirch Co. v. Goerke*

*Kirch Holding Co.,* 118 *N. J. Eq.* 1, 4 (*E. & A.* 1934). Our statute, *N. J. S.* 2A:24–1 provides:

"A provision in a written contract to settle by arbitration a controversy \* \* \* shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract."

It has often been said that courts favor arbitration. *Public Utility Construction and Gas Application Workers etc. v. Public Service Electric & Gas Co.,* 35 *N. J. Super.* 414, 419 (*App. Div.* 1955), certification denied 19 *N. J.* 333 (1955). In the instant case, the validity of the contract and the submission to arbitration thereunder is not in dispute. Neither contains any express time limitation within which the arbitrators are to act. Under such circumstances, performance within a reasonable time is implied, and what is a reasonable time depends upon the particular facts in each case. *Rogers v. Tatum,* 25 *N. J. L.* 281 (*Sup. Ct.* 1855); *Wemple v. B. F. Goodrich Co.,* 126 *N. J. L.* 465, 469 (*E. & A.* 1941). The sole question is whether plaintiff is precluded from proceeding with the establishment of his claim and the defendants their counterclaim before arbitrators in the pending proceeding. We have concluded that under the facts and circumstances here, each party should have the opportunity of presenting its respective claims in arbitration proceedings.

Plaintiff argues that the trial court should not have decided the issues of laches or waiver but should have declined to rule, leaving those questions to be decided by the arbitrators. Our disposition of the merits, however, renders this argument academic.

By the stipulation of October 8, 1945, the parties provided for a board of three arbitrators. It made no provision for the death of an arbitrator. The death of an arbitrator before the close of the hearings has the effect of terminating the authority of the board to render an award and revokes the submission. *Amalgamated Ass'n, etc., v. Connecticut Co.,* 142 *Conn.* 186, 112 *A. 2d* 501, 4 *A. L. R.*

2d 891 (*Sup. Ct. Err.* 1955), Annotation, "Arbitrator-Withdrawal or Death," 49 A. L. R. 2d 900, 903 (1956). Arbitrators Grosman and Cole selected Augustus C. Studer as the third arbitrator. In June 1950 plaintiff, through counsel, requested Cole to withdraw which he did and Andrew B. Crummy took his place. Grosman died on December 17, 1955 and Studer died on January 4, 1957.

Accordingly, the controversies between the parties should be resubmitted to arbitration before arbitrators to be selected by them, if possible, otherwise to be appointed by the court in accordance with N. J. S. 2A:24-5, and to be heard and determined expeditiously.

The orders under review are reversed.