ALLWOOD PLUMBING & HEATING CO., INC.,
PLAINTIFF-RESPONDENT.

v.

LOCAL UNION 274 OF THE UNITED ASSOCIATION OF JOURNEY-
MEN AND APPRENTICES OF THE PLUMBING AND PIPEFIT-
TING INDUSTRY OF THE UNITED STATES AND CANADA,
AFL-CIO, AND LOCAL UNION 14 OF THE UNITED ASSOCIA-
TION OF JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED
STATES AND CANADA, AFL-CIO, DEFENDANT-APPEL-
LANTS.

Superior Court of New Jersey
Appellate Division

Submitted February 21, 1985—Decided March 21, 1985.

518

Before Judges FRITZ, GAULKIN and LONG.

*Hott, Margolis & Hernandez,* attorneys for appellants (*Timothy R. Hott,* of counsel and on the brief).

*Krieger, Ferrara, Flynn & Catalina,* attorneys for respondent (*Joseph J. Ferrara,* on the brief).

The opinion of the court was delivered by

LONG, J.A.D.

On this appeal, Local Union 274 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO, and Local Union 14 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO (unions) challenge a decision of the trial judge which enjoined them from seeking arbitration of issues arising out of their contract with the Allwood Plumbing & Heating Co., Inc. (Allwood).

Allwood is a plumbing and heating contractor primarily engaged in mechanical equipment service and maintenance. The unions are unincorporated labor organizations under the purview of the Taft-Hartley Act, and affiliated with the United Association of Journeymen and Apprentices of the Plumbing & Pipefitting Industry, AFL–CIO. Prior to 1983, the unions and the Mechanical Contractors Association of New Jersey (Association), of which Allwood is not a member, entered into local collective bargaining agreements. From 1975 to 1982, notwithstanding its lack of membership in the Association, Allwood was a signatory to these local agreements. (In 1983 all parties became signatories to the "National Mechanical Equipment Service and Maintenance Agreement".) Allwood claims that during the period in which the local agreements were in effect, it modified those agreements with the assent of its employees in three respects:

(1) Overtime payments on service and maintenance contracts were reduced from double time to one and a half time;

(2) Allwood was given sole discretion to determine when to use foremen on jobs;

(3) The relationship of mechanics to helper—apprentices was reduced from an equal ratio to a one to six ratio.

On October 28, 1983 the unions invoked the arbitration clause in the local agreement alleging "wage under payments and contract breaches." Under that clause the arbitration was to take place before a panel made up equally of union members and members of the Association. On December 14, 1983 All-wood moved for a temporary restraining order to block the arbitration based on the composition of the arbitration panel, arguing that:

> The employer representatives to the Joint Conference Committee are party-designated arbitrators of the Mechanical Contractors Association of which plaintiff is not a member. These arbitrators are executive members and/or officers and/or competitors of the plaintiff, and vigorously compete with the plaintiff.... Quite clearly, there is a *commonality* of financial interests among the Union party-designated arbitrators and the Mechanical Contractor party-designated arbitrators to the local Union agreements. A determination favorable to the Union position is a determination favorable to the members of the Mechanical Contractors Association since such a decision would result in the imposition upon Allwood of substantially increased rates of wages and terms and conditions of employment.

Temporary restraints were granted, after which both parties moved for summary judgment. On April 9, 1984, the trial judge granted summary judgment to Allwood and issued a permanent injunction against arbitration under the local agreement. In an opinion which falls far short of the requirements of *R.*4:46–2 [1] the trial judge declared:

> The plaintiff's position is to be sustained mainly for the reasons posited by Mr. Ferrara [Allwood's counsel]. In mode and procedure created by the local (New Jersey Mechanical Contractor's association) contract as applied to these rather special facts represents an invitation to unfairness. The plaintiff, under the local arbitration agreement, is asked to defend its position before a panel comprised of individuals, fifty percent of which are members of the adversary union and fifty percent are members of what Allwood perceives as competitors.

. . . . . . . .

[1]The trial judge reserved "the right to supplement this letter opinion with a more formal written opinion," a right he elected not to exercise.

> Were this a dispute between the Union and the association, then the local agreement would be more appropriate. Here, where the plaintiff may stand alone before a bias [sic] arbitration panel, the appearance of impropriety and conflict of interest should be avoided.

While this so-called decision is an unsatisfactory substitute for the obligation of the court to "find the facts and state its conclusions in accordance with *R.*1:7–4" (*R.*4:46–2), it is possible with effort to glean from the record enough information to speculate reasonably regarding the judge's reasoning so as to form a basis for appellate review. Apparently the trial judge believed that if Allwood and its employees had modified the union agreement it would be unfair to require Allwood to proceed to arbitration before a panel which appeared to represent neither Allwood nor its employees. Accordingly, he enjoined the arbitration.

■ The parties agree, and it is well settled, that the state must apply federal substantive law in determining labor arbitration issues. *Local 174 Teamsters v. Lucas Flour Co.*, 369 *U.S.* 95, 82 *S.Ct.* 571, 7 *L.Ed.*2d 593 (1962); *Standard Motor Freight, Inc. v. Local 560*, 49 *N.J.* 83 (1967). The unions argue that the federal cases uniformly hold that there is no federal authority to require an arbitration panel member to step down prior to the arbitration due to alleged partiality. *Morelite Construction v. N.Y.C. Dist. Council Carpenters*, 748 *F.*2d 79, 81 (2d Cir.1984); *Sanko S.S. Co., Ltd. v. Cook Industries, Inc.*, 495 *F.*2d 1260, 1264 n. 4, (2d Cir.1973); *Marc Rich & Co. v. Transmarine Seaways Corp.*, 443 *F.Supp.* 386, 387 (S.D.N.Y. 1978). In *Florasynth, Inc. v. Pickholz*, 750 *F.*2d 171 (2d Cir.1984), the court expressed this point of view, "The Arbitration Act does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service." *Id.* at 174. Allwood concedes that this is true but maintains that the absence of federal authority creates a vacuum in which the states are free to formulate remedies of their own including injunctive relief such as that

which was granted by the trial judge. *Graham v. Scissor Tail, Inc.*, 28 *Cal.*3d 807, 187 *Cal.Rptr.* 604, 623 *P.*2d 165 (1981); *cf. Ferger v. Local 483*, 94 *N.J.Super.* 554 (App.Div.1967). Assuming for the purpose of this case that there is no absolute bar under federal law to a pre-arbitration injunction, we nevertheless view the grant of injunctive relief by the trial judge as improvident and reverse.

██ Labor arbitration has a distinctive function in the collective bargaining process. In the so-called "Steelworkers Trilogy" (*United Steelworkers v. American Manufacturing Co.*, 363 *U.S.* 564, 80 *S.Ct.* 1343, 4 *L.Ed.*2d 1403 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 *U.S.* 574, 80 *S.Ct.* 1347, 4 *L.Ed.*2d 1409 (1960); *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 *U.S.* 593, 80 *S.Ct.* 1358, 4 *L.Ed.*2d 1424 (1960)), the Supreme Court reaffirmed the strong federal policy favoring labor arbitration because "it is at the very heart of the system of industrial self-government." *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 *U.S.* at 581, 80 *S.Ct.* at 1352. New Jersey caselaw also reflects a strong public interest in labor arbitration and establishes a policy of judicial deference to this favored process. As the court in *Standard Motor Freight v. Local Union No. 560*, 49 *N.J.* 83 (1967) observed:

> A court must always look at any question relating to arbitrability from the fundamental point of view laid down by section 203(d) of the Labor Management Relations Act, 29 *U.S.C.A.* § 173(d):
>
> 'Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement * * '

> As the court said in *United Steelworkers of America v. American Manufacturing Co.*, 363 *U.S.* 564, 566, 80 *S.Ct.* 1343, 1346, 4 *L.Ed.*2d. 1403, 1406 (1960); 'That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.' The clear thesis is that the judicial role should be a very limited one, considerably less even than the restricted court function in commercial arbitration matters. [49 *N.J.* at 95]

██ Crucial to the resolution of the question here presented is that this case does not involve the defenses customarily

posed when a party moves to compel arbitration under *N.J.S.A.* 2A:24–3. There is no question but that the litigants are signatories to a contract mandating arbitration. Allwood does not assert that the unions' grievances are beyond the reach of the arbitration provision. Indeed the arbitration provision of the local agreement could not be clearer: "The purpose of this Agreement is to provide a method by which *any and all disputes* arising between the parties hereto may be peacefully disposed of...." (Emphasis supplied). Absent these defenses, courts will normally let the arbitration take its course and not consider any challenges to the process until an action is brought to confirm the award. *Laborers' Local Union No. 472 etc. v. Interstate Curb & Sidewalk et al.,* 90 *N.J.* 456 (1982); *Perez v. American Bankers Ins. Co.,* 81 *N.J.* 415 (1979); *In the Matter of the Arbitration of Grover,* 80 *N.J.* 221 (1979); *Standard Motor Freight v. Local Union No. 560,* 49 *N.J.* 83 (1967).

Allwood argues that the case of *Barcon Associates v. Tri-County Asphalt,* 86 *N.J.* 179 (1981) holds that a party may seek a pre-arbitration "judicial determination of whether [the] arbitrator appears to be too partial to be permitted to participate in the arbitration." 86 *N.J.* at 194. While that commercial case seems to suggest the existence of such a remedy, we do not conceive of this case as one within the contemplation of its holding. *Barcon* requires disclosure of possible conflicts of interest on the part of an arbitrator prior to the commencement of the proceeding. If this disclosure reveals a connection between an arbitrator and one of the parties such that the arbitrator will appear to be "too partial" to that party, the opponent may seek his removal. *Barcon* does not suggest that a party is entitled to a pre-arbitration proceeding to challenge an arbitrator or panel specifically identified and agreed to in the contract. That is what is involved here. For eight successive years and knowing full well the constituency of the arbitration panel, Allwood voluntarily bound itself to the arbitration provision of the local agreement, promising to substitute that private

forum for litigation. There is no suggestion here that Allwood recently discovered some formerly undisclosed fact about the proposed arbitrators indicating bias or partiality. All that is involved is Allwood's present resistance to the very provisions of the contract whereby it agreed to arbitrate. Nothing in *Barcon* supports the view that a party such as Allwood is entitled to pre-arbitration relief from the precise terms of its agreement.

The Arbitration Act prescribes: "If a method is provided in the agreement for naming or appointing an arbitrator or umpire, it shall be followed...." *N.J.S.A.* 2A:24–5. It has often been said that the means selected by the parties for dispute resolution is to be "given full play." *Standard Motor Freight, Inc. v. Local 560*, 49 *N.J.* at 95. Under the circumstances presented "full play" means that this arbitration should run its course. "The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are far better informed of the prevailing ethical standards and reputations within their business." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 *U.S.* 145, 151, 89 *S.Ct.* 337, 340, 21 L.Ed.2d 301 (1968) (White, J. concurring). We do not imply by anything we have said that the arbitrators themselves are relieved from any obligation imposed on them by *Barcon*. Our views in this respect are to the contrary.

█ We note in passing that even if we were inclined to view the right to a pre-arbitration injunction more expansively than we do, Allwood would not be entitled to such relief on substantive grounds. Allwood's argument as to the "unfairness" of requiring it to arbitrate in accordance with the contract cannot withstand scrutiny. Except for its lack of membership in the association, Allwood stands on the exact same footing as every other employer who is required to arbitrate under the local agreements. The panel is to be made up of union members and mechanical contractors—a constituency specifically designed to

achieve the healthy tension between labor and management which is critical to the arbitration process. Like Allwood, every other employer who arbitrates is subject, on the one hand, to the natural resistance of the union members to management and on the other, to the question of the financial interests of its competitors. This particular mix of labor and management is the one to which the parties pledged themselves in structuring their arbitration process and to which Allwood wedded itself as a voluntary signatory to the agreement. The record does not support Allwood's claim that this is a unique situation and the constituency of the panel does not per se justify a finding of bias or partiality.

This case is entirely unlike *Graham v. Scissor Tail Inc., supra* and *In re Cross & Brown Co.,* 4 *A.D.*2d 501, 167 *N.Y.S.* 2d 573 (1957) which are relied on by Allwood. There the courts held that the principle of "natural justice" requires a rule of absolute disqualification where a party to an arbitration seeks to serve as an arbitrator in his own cause. *In re Cross v. Brown Co.,* 167 *N.Y.S.*2d at 575–576. Nothing could be further from the facts here presented. Thus we see no reason to interfere in the arbitration process and so hold.

Reversed and remanded for an order dismissing the complaint.