720 A.2d 659 (1998)
316 N.J. Super. 517
ARISTA MARKETING ASSOCIATES, INC. and Philip J. Curcura, Plaintiffs-Respondents,
v.
The PEER GROUP, INC. and Barry Fry, Defendants-Appellants.
The PEER GROUP, INC. and Barry J. Fry, Plaintiffs-Appellants,
v.
ARISTA MARKETING ASSOCIATES, INC. and Philip J. Curcura, Defendants-Respondents, and
Kenneth Arlein, Stephen Knox, and American Arbitration *660 Association, Defendants.[1]
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1998.
Decided December 9, 1998.
Ambrose Richardson, for appellants (Richardson, Mahon, Casey & Rooney, of the New York Bar, pro hac vice, New York City, attorneys; Rabner, Allcorn, Baumgart & Ben-Asher, Montclair, co-counsel; Mr. Richardson and David Owen, Montclair, on the brief).
Robert E. Rochford, Hackensack, for respondents (Wine, Banta, Rizzi, Hetherington & Basralian, attorneys; Mr. Rochford and Brian J. Neff, on the brief).
Before Judges WALLACE, NEWMAN and FALL.
The opinion of the court was delivered by *661 FALL, J.S.C. (temporarily assigned).
In these separate commercial arbitration appeals, consolidated for opinion purposes, we examine the court's authority for the pre-arbitration removal of a party-appointed arbitrator, designated pursuant to the tripartite arbitration procedures set forth in the corporate dissolution agreement of the parties. We also consider whether the pre-arbitration disqualification of a party-appointed arbitrator based on "evident partiality" requires appointment of an entirely new arbitration panel. In the first action, the motion judge removed a party-appointed arbitrator, pre-arbitration, based on a finding of "evident partiality." In the second action, under the terms of the arbitration clause in the parties' agreement, the motion judge determined the pre-arbitration disqualification of a party-appointed arbitrator based on "evident partiality" was not cause for disqualification of the remaining arbitrators, and de novo commencement of the arbitrator appointment process. We affirm both decisions.

I.
The facts and procedural history are complex and require significant discussion. Philip J. Curcura and Barry J. Fry were each 50% owners of both Arista Marketing Associates, Inc. (Old Arista) and Oakwood Consulting, Inc. (Oakwood). These corporations were engaged in the business of providing promotional and marketing services to the health care industry.
Curcura and Fry began to have disagreements concerning the operation of these businesses in 1993. After considerable negotiations, in November 1994, Curcura and Fry entered into a number of agreements designed to terminate their joint ownership. Under the terms of a Workout Agreement dated November 24, 1994, Fry transferred his 50% interest in Oakwood to Curcura, who changed Oakwood's name to Arista Marketing Associates, Inc. (New Arista); and Curcura transferred his 50% interest in Old Arista to Fry, who changed Old Arista's name to The Peer Group, Inc. (Peer). Fry agreed to pay Curcura $250,000 for Curcura's interest in Old Arista (now Peer), and Curcura agreed to pay Fry $1,000 for Fry's interest in Oakwood (now New Arista).
In further consideration for these ownership transfers, Fry and Curcura agreed to a division of clients; equipment ownership; assumption of lease obligations; various non-solicitation covenants; indemnification provisions; and various other matters relating to these ownership transfers. In addition to the foregoing, Article 7.1 of the Workout Agreement, titled "Arbitration" provides:
Except with respect to any proceeding brought under ARTICLE SIX hereof, any controversy, claim, or dispute between the parties, directly or indirectly, concerning this Agreement or the breach hereof, or the subject matter hereof, including questions concerning the scope and applicability of this arbitration clause, shall be finally settled by arbitration in Union County, New Jersey pursuant to the rules then applying of the American Arbitration Association. The arbitrators shall consist of one representative selected by Fry, one representative selected by Curcura and one representative selected by the first two arbitrators. The parties agree to expedite the arbitration proceeding in every way, so that the arbitration proceeding shall be commenced within thirty (30) days after request therefore is made, and shall continue thereafter, without interruption, and that the decision of the arbitrators shall be handed down within thirty (30) days after the hearings in the arbitration proceedings are closed. The arbitrators shall have the right and authority to assess the cost of the arbitration proceedings and to determine how their decision or determination as to each issue or matter in dispute may be implemented or enforced. The decision in writing of any two of the arbitrators shall be binding and conclusive on all of the parties to this Agreement. Should either Curcura or Fry fail to appoint an arbitrator as required by this ARTICLE SEVEN within thirty (30) days after receiving written notice from the other party to do so, the arbitrator appointed by the other party shall act for all of the parties and his decision in writing shall be binding and conclusive on all of the *662 parties to this Workout Agreement. Any decision or award of the arbitrators shall be final and conclusive on the parties to this Agreement; judgment upon such decision or award may be entered in any competent Federal or state court located in the United States of America; and the application may be made to such court for confirmation of such decision or award for any order of enforcement and for any other legal remedies that may be necessary to effectuate such decision or award.
This arbitration clause is applicable to all disputes arising between Fry and Curcura under the Workout Agreement, except to proceedings brought under Article Six, relating to any alleged violations of the non-solicitation covenants. The parties also entered into a Consulting Agreement on November 29, 1994, whereby New Arista agreed to provide specified consulting services to Peer for compensation set forth therein.
After the ownership transfers, Fry contended Curcura wrongfully appropriated assets valued at several hundred thousand dollars and that Curcura failed to pay his share of continuing expenses. Fry then set-off the amounts of these alleged misappropriations and non-payments from amounts Fry owed Curcura under the Workout Agreement and Consulting Agreement. Curcura denied Fry's allegations and objected to the set-offs. Unable to resolve these disputes, Curcura invoked the arbitration clause to resolve the controversies, filing a demand for arbitration on February 29, 1996. The amounts at issue exceed $1 million.
Pursuant to the arbitration procedures set forth in Article 7.1 of the Workout Agreement, on March 15, 1996 Fry selected Todd Sahner, an attorney, as his designated arbitrator. On April 3, 1996 Curcura selected Stephen Knox, an attorney, as his designated arbitrator. Sahner and Knox then selected Kenneth Arlein, an accountant, as the neutral arbitrator.
Todd Sahner is an attorney with the firm of Hannoch Weisman. After his appointment, and pursuant to rules of the American Arbitration Association (AAA), Sahner disclosed that he and his firm were previously retained by Fry to commence a corporate dissolution proceeding of Old Arista against Curcura in the event the negotiations between Fry and Curcura to transfer and allocate their respective ownership interests in those corporations failed. While the negotiations leading to, and performance of, the Workout Agreement and Consulting Agreement were performed by other attorneys in his firm, Sahner did spend eight hours meeting with Fry and reviewing and editing pleadings and preparing a certification for use in a proposed corporate dissolution action. The November 28, 1994 agreements reached by Fry and Curcura eliminated any need for the corporate dissolution action. Sahner's firm continued to represent Fry until December 1994.
On May 23, 1996 the AAA forwarded Curcura the notice of appointment completed by Sahner, wherein Sahner disclosed the prior representation. Curcura objected to Sahner's participation in the arbitration proceeding through the June 3, 1996 letter of his attorney to the AAA. Through counsel, each party advanced their positions on the objection to Sahner to the AAA. The AAA responded to this objection, by its letter dated June 27, 1996, providing, in relevant part:
Please be advised that inasmuch as Mr. Sahner is not designated as the "neutral" Arbitrator in this matter, the Association cannot assert a determination pursuant to Section 19 of the Commercial Arbitration Rules of the American Arbitration Association.
The AAA then scheduled the initial arbitration hearings for November 18, 1996. Curcura's objection to Sahner serving as an arbitrator was raised again at the November 18, 1996 arbitration hearing. Curcura contended the arbitrators had jurisdiction to decide the disqualification issue. The arbitrators determined they had no authority to rule on Sahner's status and denied Curcura's request to adjourn the arbitration proceedings, after Fry stipulated he would not allege any prejudice or contend the court had no jurisdiction to consider the disqualification issue solely based on the fact the arbitration hearings had commenced. The arbitration hearing proceeded, and continued through November 20, 1996.
*663 On November 21, 1996, Curcura and New Arista filed a verified complaint with the Chancery Division seeking disqualification of Sahner from the arbitration proceedings on the basis of "evident partiality," relying on N.J.S.A. 2A:24-8(b) and Barcon Associates v. Tri-County Asphalt Corp., 160 N.J.Super. 559, 390 A.2d 684 (Law Div.1978), aff'd, 172 N.J.Super. 186, 411 A.2d 709 (App.Div. 1980), aff'd, 86 N.J. 179, 430 A.2d 214 (1981). An order was entered by Judge Kentz on November 21, 1996, directing Fry and Peer to show cause on January 22, 1997 why the relief in the complaint should not be granted. The order restrained the parties from continuing the arbitration hearing, pending further order.
The January 22, 1997 return date was carried to January 29, 1997. Judge Kentz continued the temporary restraints, converting them into a preliminary injunction, ultimately executing an order to that effect on May 27, 1997. The matter was transferred to Judge Boyle, who conducted a case management conference on June 26, 1997, ordered limited discovery, and set the matter down for a hearing. Both parties moved for summary judgment.
After hearing oral argument on September 12, 1997, Judge Boyle ruled Sahner was disqualified, finding his prior representation of Fry in the corporate dispute with Curcura constituted "evident partiality" under Barcon. On September 15, 1997, Judge Boyle read into the record an opinion detailing his findings and reasons for that ruling. Further, he directed the arbitration to proceed expeditiously in accordance with the arbitration clause in Article 7.1 and the Commercial Arbitration Rules of the AAA. Fry and Peer filed this appeal on October 20, 1997, and on November 10, 1997, Judge Boyle denied their application for a stay of the arbitration proceedings pending appeal. We denied the application for a stay on January 16, 1998.
Through counsel's letter to the AAA dated October 24, 1997, Fry and Peer selected James T. Kelly as their party-appointed arbitrator, under protest. Fry and Peer also objected to Knox and Arlein continuing as arbitrators, contending that since Kelly was not part of the original arbitration proceeding, the arbitrator selection process in Article 7.1 of the Workout Agreement should start from the beginning; that Curcura should select a new party-arbitrator, and then Kelly and that arbitrator should select a new neutral arbitrator; and that the arbitration hearings should start anew. The AAA considered the position of both parties and, by letter dated December 24, 1997 ruled, in relevant part:
After careful consideration of the Parties' contentions, the Association hereby rules as follows:
Mr. Kenneth Arlein is hereby reaffirmed as the neutral Arbitrator in this matter. The Parties are requested to return the Calendar Forms enclosed with the letter from the undersigned dated December 10, 1997 by no later than December 31, 1997 so that a preliminary hearing and/or telephone conference may be scheduled.
On February 11, 1998 Fry and Peer presented a verified complaint for filing and order to show cause for consideration, naming Curcura, New Arista, Arlein, Knox and the AAA as defendants, seeking an order restraining the arbitration; disqualifying Knox and Arlein on the basis of "evident partiality"; and requiring the arbitrator appointment process proceed de novo under Article 7.1 of the Workout Agreement. The complaint and order to show cause were considered at a hearing conducted by Judge Boyle on February 18, 1998. Fry and Peer contended that arbitration must commence de novo in the event of the death or involuntary withdrawal of an arbitrator before a decision is rendered. They alleged continuation of Knox and Arlein prejudices them, as Kelly did not participate in the selection of Arlein, as contemplated in the arbitration clause. Fry and Peer further contended the ability of Knox and Arlein to be impartial was tainted by their participation in the aborted arbitration hearings.
Judge Boyle rejected the complaint presented by Fry and Peer by order dated February 18, 1998, essentially dismissing it. The judge first considered application of the entire controversy doctrine to bar this second action. He found in the first action, that Fry and Peer could have, and in fact did, anticipate *664 the reappointment or continuation of Knox and Arlein as arbitrators. He determined the continuation of Knox and Arlein was part of the same controversy litigated and decided in the first action. The judge felt it appropriate to apply the claim preclusion bar of R. 4:30A to the second action.
However, Judge Boyle also addressed the merits of the proposed complaint. He noted under Article 7.1 of the Workout Agreement, the parties agreed that any questions concerning the scope and applicability of the arbitration clause itself shall be determined by arbitration pursuant to the rules of the AAA. He noted the AAA confirmed continuation of Arlein as the neutral arbitrator and determined the decision of the AAA was binding on the parties. The judge also noted that Sahner, although subsequently disqualified, did participate in the appointment of Arlein, concluding Fry and Peer received the benefit of participation in the selection of the neutral arbitrator in accordance with the arbitration clause. Further, the judge noted Fry and Peer failed to demonstrate how continuation of Arlein and Knox as arbitrators violated the "evident partiality" standard under Barcon and N.J.S.A. 2A:24-8(b). Fry and Peer filed a second notice of appeal on April 3, 1998, appealing Judge Boyle's February 18, 1998 decision.
On the appeal from the order disqualifying the party-appointed arbitrator, Todd Sahner, Fry and Peer present the following arguments for consideration:
POINT I
THE NEW JERSEY ARBITRATION STATUTE DOES NOT AUTHORIZE THE PRE-ARBITRATION REMOVAL OF A PARTY-APPOINTED, NON-NEUTRAL ARBITRATOR.
POINT II
THE CONTRACTUAL RIGHT TO ONE'S CHOICE OF ARBITRATOR OUTWEIGHS THE RIGHT, IF ANY, OF THE OPPOSING PARTY TO APPEARANCES.
POINT III
BY AVOIDING A PRELIMINARY CONFERENCE, AND WAITING UNTIL THE BEGINNING OF HEARINGS, PLAINTIFF WAIVED ANY RIGHT TO PRE-ARBITRATION CHALLENGES.
POINT IV
A DE MINIMIS PRIOR BUSINESS INVOLVEMENT IS NOT "EVIDENT PARTIALITY."
On the appeal from the order rejecting the complaint seeking disqualification of the neutral arbitrator, Kenneth Arlein, and the party-appointed arbitrator, Stephen Knox, Fry and Peer present the following arguments:
POINT I
THE LAW AND THE ARBITRATION AGREEMENT REQUIRE THE ARBITRATION TO COMMENCE DE NOVO.

POINT II
THIS ACTION IS NOT BARRED BY THE ENTIRE CONTROVERSY DOCTRINE.

II.
The primary contention in the first appeal of Fry and Peer is that the New Jersey Arbitration and Award statute, N.J.S.A. 2A:24-1 to -11, does not authorize the pre-arbitration removal of a party-appointed, non-neutral arbitrator. We disagree. Our Supreme Court approved the judicial disqualification of an arbitrator found to have "evident partiality" under N.J.S.A. 2A:24-8(b), whenever discovered. Barcon, 86 N.J. at 188-89, 430 A.2d 214. Barcon similarly involved a tri-partite arbitration contract clause. After the arbitration was completed, it was discovered that the arbitrator designated by Barcon Associates had ongoing business dealings with Barcon. While the trial judge found no proof Barcon's designated arbitrator acted in a biased or partisan manner during the arbitration proceedings, the trial judge vacated the arbitration award, explaining:
In short, the objective circumstances were such that reasonable men would perceive a relatively high risk of biased and partisan decision making on the part of arbitrator Spatz. The appearances inherent in this situation fatally compromised the independence and impartiality required of arbitrator Spatz. I conclude that there was "evident *665 partiality" of an arbitrator in this case within the meaning of N.J.S.A. 2A:24-8b.
[Barcon, 160 N.J.Super. at 571, 390 A.2d 684.]
In affirming, the Supreme Court concluded the "existence of an undisclosed, substantial business relationship between a party-designated arbitrator in tri-partite arbitration and the party designating that arbitrator" throughout the arbitration proceeding "constitutes `evident partiality' under N.J.S.A. 2A:24-8(b)." Barcon, 86 N.J. at 182-83, 191, 430 A.2d 214. The Court went on to state:
In addition, we establish prospectively the requirement that every arbitrator, whether party-designated or `neutral,' disclose to the parties, prior to the commencement of arbitration proceedings, any relationship or transaction that he has had with the parties or their representatives. This disclosure should also include any other fact which would suggest to a reasonable person that the arbitrator is interested in the outcome of the arbitration or which might reasonably support an inference of partiality.

[Barcon, 86 N.J. at 183, 430 A.2d 214 (emphasis added).]
The Supreme Court explained it had decided to "adopt" such a "pre-arbitration disclosure requirement" because it had several advantages. Id. at 192-93, 430 A.2d 214. For example, it would "reduce the likelihood of potentially wasteful post-arbitration challenges." Id. at 193, 430 A.2d 214. Also, pre-arbitration disclosure would accomplish this:
Disclosure will leave to the parties themselves the initial decision as to whether to object to an arbitrator designated by the other side and, if necessary, to seek judicial determination of whether that arbitrator appears to be too partial to be permitted to participate in the arbitration.

[Id. at 194, 430 A.2d 214.]
Even though the dissent in Barcon opposed the majority's establishment of this pre-arbitration disclosure requirement, the dissent acknowledged the "majority's pre-arbitration disclosure requirement now confers upon parties the pre-hearing right to object to the other party's selection of a representative arbitrator." Id. at 213, 430 A.2d 214 (Clifford, J., dissenting). Given the "long-standing, successful commercial practice... of tripartite commercial arbitration," the dissent perceived no need for such a "judicially-imposed requirement that the party-designated arbitrators disclose such prior dealings or relationships as would demonstrate the specific degree of their possible bias." Id. at 200, 215, 430 A.2d 214.
Appellants' reliance on Allwood Plumbing & Heating Co., Inc. v. Local Union 274, 199 N.J.Super. 517, 489 A.2d 1243 (App.Div. 1985), to support their assertion the trial court lacked jurisdiction to consider disqualification of a party-appointed arbitrator prior to completion of the arbitration is misplaced. In Allwood Plumbing, we determined plaintiff was not entitled to pre-arbitration relief under the particular facts before us. Under the arbitration clause in Allwood Plumbing, any arbitration was to take place before a panel made up equally of union members and members of the Mechanical Contractors Association of New Jersey. Plaintiff, Allwood Plumbing & Heating Co., Inc., was not a member of that Association. When the unions invoked the arbitration clause, Allwood sought a restraining order to block the arbitration, based on the composition of the arbitration panel. Allwood Plumbing, 199 N.J.Super. at 519-20, 489 A.2d 1243. We reversed the trial court's grant of the restraining order, and remanded for entry of an order dismissing Allwood's complaint, explaining:
Allwood argues that the case of Barcon Associates v. Tri-County Asphalt, 86 N.J. 179 [430 A.2d 214] (1981), holds that a party may seek a pre-arbitration "judicial determination of whether [the] arbitrator appears to be too partial to be permitted to participate in the arbitration." 86 N.J. at 194 [430 A.2d 214]. While that commercial case seems to suggest the existence of such a remedy, we do not conceive of this case as one within the contemplation of its holding. Barcon requires disclosure of possible conflicts of interest on the part of an arbitrator prior to the commencement of the proceeding. If this disclosure reveals a connection between an arbitrator *666 and one of the parties such that the arbitrator will appear to be "too partial" to that party, the opponent may seek his removal. Barcon does not suggest that a party is entitled to challenge an arbitrator or panel specifically identified and agreed to in the contract. That is what is involved here. For eight successive years and knowing full well the constituency of the arbitration panel, Allwood voluntarily bound itself to the arbitration provision of the local agreement, promising to substitute that private forum for litigation. There is no suggestion here that Allwood recently discovered some formerly undisclosed fact about the proposed arbitrators indicating bias or partiality. All that is involved is Allwood's present resistance to the very provisions of the contract whereby it agreed to arbitrate. Nothing in Barcon supports the view that a party such as Allwood is entitled to pre-arbitration relief from the precise terms of its agreement.
[Allwood Plumbing, 199 N.J.Super. at 523-24, 489 A.2d 1243 (emphasis added).]
Contrary to appellants' contention, in Allwood Plumbing we expressly recognized the authority conferred by Barcon to consider the pre-arbitration removal of an arbitrator if disclosure reveals the existence of "evident partiality." In Allwood Plumbing, plaintiff entered into a contract that identified the arbitrator panel, and there was no post-contract discovery of formerly undisclosed facts indicating "evident partiality."
Appellants' argument that one party's contractual right to appoint an arbitrator of that party's choice outweighs the other party's right to seek rejection of any arbitrator sufficiently exhibiting the "appearance of partiality" was rejected in Barcon, where the Court stated:
Although arbitration originates in the contract of the parties and is a process which may operate without any court involvement, we reject the notion, repeatedly asserted by the dissent, that the parties' contract should prevail over all other considerations. In particular, we give priority to the need to maintain the integrity of arbitration and public faith in the process .... [I]t is our strongly held view that honest, fair and impartial arbitration is as important as the finality of arbitration. Because of the confidentiality in which arbitrators conduct their deliberations, the goal of ensuring that they will adhere to high standards will best be attained by requiring them to avoid not only actual partiality but also the appearance of partiality.

[Barcon, 86 N.J. at 189, 430 A.2d 214 (citations omitted).]
We are bound by the majority opinion in Barcon and reject appellants' arguments that pre-arbitration removal of a party-appointed, non-neutral arbitrator is prohibited where "evident partiality" is demonstrated.

III.
Fry and Peer also contend that Curcura and New Arista waived any right to pre-arbitration challenges because they waited nearly five months after their first objection to Sahner's appointment in June 1996, before seeking relief from the court in November 1996.
On June 27, 1996, the AAA notified both sides it could not make a determination regarding the objection to Sahner's participation in the arbitration "inasmuch as Mr. Sahner is not designated as the `neutral' Arbitrator in this matter." At the beginning of the initial arbitration hearing on November 18, 1996, Curcura and New Arista sought to obtain the arbitrators' ruling on Sahner's status. However, the arbitrators ruled they did not have the authority to consider disqualification of Sahner, and therefore did not address the substantive issue of whether he should be disqualified due to an appearance of "evident partiality." On November 21, 1996, Curcura and New Arista filed their Chancery Division complaint.
In Barcon, the Supreme Court emphasized that arbitrators "must make full disclosure prior to the commencement of proceedings," and ruled that, "should an arbitrator make full disclosure and the other party fail to object at that time, that party will be held to have waived any right later to object to the designation of the arbitrator on the *667 grounds so revealed." Barcon, 86 N.J. at 195, 430 A.2d 214. The Court explained, under the "rule of waiver we have adopted for these arbitration proceedings," a "timely objection" was one advanced before the "panel has rendered an unfavorable decision":
Courts can only rule on the apparent partiality of an arbitrator if one of the parties objects and brings the matter before the courts. It would be inequitable and wasteful to allow a party to withhold its objections until after the panel has rendered an unfavorable decision. While we do not condone arbitration awards made by a panel whose members are not impartial, we see a greater evil in permitting parties that are aware of grounds for objection to put the other party and the panel through the time and expense of arbitration proceedings before challenging the proceedings.
[Barcon, 86 N.J. at 197, 430 A.2d 214.]
Here, Curcura and New Arista timely objected to Sahner's continuation as an arbitrator once disclosure of his past representation of Fry took place. When the AAA ruled it did not have the authority to consider removal of Sahner, they raised the issue again, before the arbitrators, at the very beginning of the arbitration hearings. When the arbitrators determined they lacked the authority to consider the issue, Curcura and New Arista promptly sought relief from the court. Waiting to first raise the issue in front of the arbitrators, before seeking court intervention, is not unreasonable, and certainly does not constitute a waiver of their right to seek relief from the court.

IV.
Fry and Peer argue that Sahner's de minimis prior business involvement with Fry does not constitute "evident partiality." Sahner, an attorney, was retained to commence corporate dissolution litigation against Curcura and Old Arista in the event the separation negotiations failed. Sahner personally spent eight hours over an eighteen-day period in November 1994 meeting with Fry and preparing pleadings, Fry's certification, and a proposed restraining order against Curcura. Sahner's law firm, Hannoch Weisman, performed additional legal services for Fry in connection with the corporate dissolution negotiations. When Curcura and Fry reached the agreements of November 28, 1994, the need for this litigation was eliminated.
Judge Boyle concluded Sahner's role in drawing pleadings on behalf of Fry for use against Curcura and Old Arista met the "evident partiality" standard, particularly in view of the adversarial nature of the representation. We agree. As the Supreme Court noted in Barcon, the Law Division judge in Barcon correctly concluded that "the line" being drawn here was "between the acceptable predisposition of attitude permitted in the case of a party-designated arbitrator and impermissible bias or partisanship (or the appearance thereof)," because "the law simply cannot allow any judicially enforceable arbitration proceeding to be anything other than an impartial proceeding which has appropriate appearances of impartiality." Barcon, 160 N.J.Super. at 570-71, 390 A.2d 684. See Gauntt Const. Co. v. Delaware River & Bay Auth., 241 N.J.Super. 422, 431, 575 A.2d 70 (Law Div.1989), rev'd on other grounds, 241 N.J.Super. 310, 575 A.2d 13 (App.Div. 1990).
The Supreme Court required all arbitrators "to avoid not only actual partiality but also the appearance of partiality," and authorized the contracting parties "to object to an arbitrator designated by the other side and, if necessary, to seek judicial determination of whether that arbitrator appears to be too partial to be permitted to participate in the arbitration." Barcon, 86 N.J. at 189, 194, 430 A.2d 214. The standard adopted by the Supreme Court in Barcon was "the appearance of partiality." We noted the standard in Allwood Plumbing:

Barcon requires disclosure of possible conflicts of interest on the part of an arbitrator prior to the commencement of the proceeding. If this disclosure reveals a connection between an arbitrator and one of the parties such that the arbitrator will appear to be "too partial" to that party, the opponent may seek his removal.
[Allwood Plumbing, 199 N.J.Super. at 523, 489 A.2d 1243.]
*668 The mere fact that a party-designated arbitrator discloses a prior relationship with the party will not necessarily disqualify the arbitrator. Barcon, 86 N.J. at 194, 430 A.2d 214. See International Bhd. of Teamsters v. Bergen-Hudson Roofing Supply Co., 159 N.J.Super. 313, 316, 387 A.2d 1246 (Ch. Div.1978) (The fact that an arbitrator had been a party's attorney is not sufficient cause for disqualification of an arbitrator for that reason per se.). On the other hand, the Supreme Court observed that "arbitration should be conducted by arbitrators, not by the parties themselves or their legal advocates." Barcon, 86 N.J. at 199, 430 A.2d 214 (emphasis added).
Here, Sahner had not only once been Fry's attorney, but had also drafted the complaint intended to be used against Curcura involving the same general matter now the subject of the parties' arbitration dispute. We find this constitutes a direct conflict to his role as an arbitrator, and clearly constitutes "evident partiality."

V.
Fry and Peer contend that once Judge Boyle disqualified Sahner as a party-appointed arbitrator, the parties were required to begin the arbitrator appointment process set forth in Article 7.1 anew, with Kelly, their newly appointed party-designated arbitrator, participating in the selection of a new neutral arbitrator.
In the September 15, 1997 order disqualifying Sahner from serving, the judge:
ORDERED that defendants shall proceed expeditiously with the currently pending arbitration in accordance with the arbitration clause contained in the contract between the parties, the Commercial Arbitration Rules of the American Arbitration Association and applicable law.
Fry and Peer interpreted that to mean the arbitrator-selection process would begin anew under Article 7.1 of the Workout Agreement. They so concluded in light of comments by Judge Kentz at the January 29, 1997 hearing concerning the effect on the arbitration if Sahner were ultimately disqualified:
THE COURT: ... I've got a question here as to whether or not this arbitrator is alleged to have some conflict of interest should he be removed and replaced. It seems to me that if that happened you'd have to start de novo with your arbitration proceeding.
MR. ROCHFORD; Yes, we would, Judge.
Judge Boyle considered the de novo argument at the February 18, 1998 hearing on whether Fry and Peer would be permitted to institute suit seeking Arlein's disqualification, stating:
You believe, in the sense that perhaps Judge Kentz used the term, although it wasn't defined, that de novo meant everybody's replaced and you start all over, that isn't always the way the term is used. Then, I suppose, I can't look into the mind of Judge Kentz, but de novo does not necessarily mean that you replace the fact-finders. It merely means that the fact-finders have to start all over again.
Now if it's, as Mr. Rochford pointed out, if it says de novo on the record, that merely means that you read the record and make a new decision. Here, of course, nothing was mentioned about de novo on the record, so that's not really germane to our discussion this morning. De novo means let's start all over again.
Curcura and New Arista contend the suit by Fry and Peer was properly barred by the entire controversy doctrine. We disagree. The September 15, 1997 order disqualifying Sahner and directing the arbitration proceed in accordance with the parties' agreement could arguably be interpreted to mean that new arbitrators would be appointed under Article 7.1 of the Workout Agreement. Certainly, it is equally tenable to conclude the opposite. Fry and Peer simply sought enforcement of their interpretation of the effect of Judge Boyle's decision. It would be inequitable to apply the claim-preclusion bar of the entire controversy doctrine in R. 4:30A under these circumstances. See Oliver v. Ambrose, 152 N.J. 383, 395-96, 705 A.2d 742 (1998).
After discussing application of the entire controversy doctrine as a bar to the second *669 suit, Judge Boyle considered the issues raised in the complaint, on the merits. We concur with the judge's conclusion that Fry and Peer procedurally received all they were entitled to under the arbitration clause. Article 7.1 provides, inter alia, that "any controversy, claim or dispute between the parties... including questions concerning the scope and applicability of this arbitration clause, shall be finally settled by arbitration in Union County, New Jersey, pursuant to the rules then applying of the American Arbitration Association." The parties contractually agreed to be bound by procedural determinations made by the AAA. When Fry and Peer contended that Arlein should be disqualified, and that the arbitrator selection process should begin anew, they placed that issue before the AAA. Curcura and New Arista responded. After careful consideration of each position, the AAA ruled on December 24, 1997 that Arlein was reaffirmed as the neutral arbitrator, and directed the arbitration to proceed. While the AAA has no rules dealing with the potential disqualification of a party-appointed arbitrator, as stated in its June 27, 1996 letter concerning Sahner, it is empowered by its rules to deal with the potential disqualification of a neutral arbitrator. The issue of whether Arlein would continue as the neutral arbitrator was resolved by the AAA in accordance with its rules. Nothing has been advanced demonstrating that determination was arbitrary or unreasonable. See Van Syoc v. Walter, 259 N.J.Super. 337, 339-40, 613 A.2d 490 (App. Div.1992), certif. denied 133 N.J. 430, 627 A.2d 1136 (1993).
The parties made a decision in their agreement that the AAA rules would apply. The AAA applied its rules, and determined Arlein should not be disqualified. Fry and Peer are contractually bound by that decision. This is distinguishable from the June 27, 1996 determination by the AAA concerning disqualification of the party-appointed arbitrator, Todd Sahner. There, the AAA declined to decide that issue because it had no rules dealing with disqualification of party-appointed arbitrators.
We recognize that the goals of maintaining the integrity of arbitration and public faith in the process overrides even the parties' agreement. Barcon, 86 N.J. at 189, 430 A.2d 214. When discussing the action taken by the AAA, Judge Boyle considered that issue, stating:
In its brief, Peer fails to indicate why this decision is not binding, as the parties' contract seemingly calls for disputes and the scope of the arbitration clause to be decided by AAA; therefore, this issue may not be properly before this Court. At the same time, the Court is cognizant of the Barcon case, supra, 86 N.J. at 189, 430 A.2d 214, where the Court noted, the parties' contract should not necessarily prevail over all other considerations, as the Court states that priority should be given to the "integrity of arbitration" and "public faith in the process."
We believe that the Barcon case obviously is a direction for this Court, but at the same time in its consideration, believe that the integrity of the arbitration and the public faith in the process can be met by requiring the hearing to start all over again; that is, de novo. So that Mr. Kelly is there right out of the starting gate, and the fact that, unless the parties agree otherwise, Mr. Curcura will have to testify live all over again.
Furthermore, regarding a probability of success on the merits, Peer has not demonstrated specifically how the appointment of Messrs. Arlein and Knox violates the "evident partiality" standard set forth in N.J.S.A. 2A:24-8(b) and discussed in Barcon, supra, 86 N.J. at 182, 430 A.2d 214, which applies to party-designated arbitrators and neutral arbitrators as well.
We are in accord with this reasoning. Our review of the record reveals nothing that would support the disqualification of the neutral arbitrator, Arlein, or the party-appointed arbitrator, Knox, and the consequent re-appointment of an entirely new panel of arbitrators. The fact Arlein and Knox participated in the prior aborted arbitration proceeding does not alone meet the "evident partiality" standard set forth in Barcon. Additionally, when Curcura and New Arista initiated their action to remove Sahner, the parties agreed the arbitration would proceed, *670 without prejudice, pending court determination.
In the absence of any substantive challenge to Arlein or Knox based on allegations of "evident partiality," procedural issues are for determination in the arbitration forum, in accordance with the agreement of the parties, free from judicial interference. See Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc., 196 N.J.Super. 16, 31, 481 A.2d 553 (App.Div.1984), aff'd o.b., 98 N.J. 266, 486 A.2d 334 (1985). Fry and Peer obtained the benefit of that portion of their agreement providing for participation in selection of the neutral arbitrator when Sahner and Knox selected Arlein. We are at this point because of Sahner's "evident partiality." It would be wholly inappropriate and unnecessary to now disqualify Arlein, Knox, or both, essentially because of Sahner's "evident partiality." Under these circumstances, the rationale for convening a new panel on death of one arbitrator in tripartite arbitration proceedings, contained in Mitchell v. Alfred Hofmann, Inc., 48 N.J.Super. 396, 406-07, 137 A.2d 569 (App.Div.), certif. denied 26 N.J. 303, 139 A.2d 589 (1958), Marine Products Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66, 67 (2d Cir.1992), and Cia De Navegacion Omsil, S.A. v. Hugo Neu Corp., 359 F.Supp. 898, 899 (S.D.N.Y.1973) is inapplicable. The death of an arbitrator, where no one is at fault, is different from circumstances where the actions of one party causes the pre-arbitration disqualification of its designated arbitrator.
In Mitchell, each party appointed an arbitrator and then those two selected a third arbitrator. The three appointed arbitrators conducted hearings in 1946. The hearings were adjourned, without date. A party-appointed arbitrator died in 1955 and the neutral arbitrator died in 1957. When one of the parties wanted to resume the arbitration in 1957, the other party objected, contending arbitration was no longer the appropriate method for resolving their dispute, contending the multi-year delay constituted laches and waiver, barring a demand for arbitration. We rejected these contentions, found no prejudice, and enforced the parties' agreement to resolve their contract disputes through arbitration. We ruled that death of an arbitrator before the close of the hearings has the effect of terminating the authority of the arbitrators to render an award and directed the controversies be resubmitted to arbitration before a new arbitration panel. Mitchell, 48 N.J.Super. at 406-07, 137 A.2d 569. Obviously, the only alternative was to appoint a new panel under such unusual circumstances.
The real issue in Mitchell was whether arbitration should proceed in view of the 11-year hiatus. Here, in contrast, a party-appointed arbitrator was disqualified, pre-arbitration, due to "evident partiality." The arbitration hearings were commenced, without prejudice, after the disqualification issue was joined through institution of court proceedings. These circumstances provide no basis for overruling the decision of the motion judge enforcing the AAA determination.

V.
In summary, the pre-arbitration removal of the party-appointed arbitrator based on a finding of "evident partiality" was correct. Under the broadly-worded arbitration clause presented, the parties agreed the rules of the AAA would apply. The ruling by the AAA that the court-disqualification of party-appointed arbitrator, Todd Sahner, on the basis of "evident partiality" did not require disqualification of the neutral arbitrator, Kenneth Arlein, was properly enforced by the motion judge. Further, appellants present no basis for disqualification of the remaining arbitrators, Kenneth Arlein and Stephen Knox. The motion judge correctly directed the arbitration to proceed.
Affirmed.
NOTES
[1] The notice of appeal filed by Peer and Fry states they are not appealing as to these defendants.