Rabin, J.
This case once again raises the difficult question whether the failure of an arbitrator to disclose fully his relationship with one of the parties to the proceeding is grounds to vacate the arbitration award. Respondent Rytex Corporation (Rytex) seeks to vacate an arbitration award rendered in favor of appellant J. P. Stevens & Co., Inc. (Stevens) on the grounds of bias of two of the arbitrators, who failed to disclose in advance of the hearing the extent of their business relationship with Stevens. The Appellate Division, one Justice dissenting, held that the relationship was substantial enough to require vacating the arbitration award. We agree and hold that the failure of an arbitrator to disclose facts which reasonably may support an inference of bias is grounds to vacate the award under CPLR 7511.
The parties entered into an agreement in 1966 under which Rytex was to perform certain services for Stevens. The agree *126 ment provided for arbitration, in accordance with the rules of the American Arbitration Association (AAA), of all contract disputes. Subsequently, when a controversy arose between the parties, Eytex initiated the arbitration proceeding which is the subject of this case. The parties were supplied by the AAA with a list of possible arbitrators, but were able to mutually agree upon only one, James T. Burnish (Burnish). In order to complete the three-arbitrator panel contemplated by the agreement, the AAA, in accordance with its rules, made an administrative appointment of Philip J. Kaplan (Kaplan) and Gerard Jerry Lincer (Lincer). Prior to agreeing upon Burnish, the parties had been advised by the AAA that he was employed by Deering Milliken, Inc. (Deering). In the letter notifying the parties of the appointments of Kaplan and Lincer, the AAA advised that Lincer was employed by Kenyon Piece Dyeworks (Kenyon). The letter concluded “if either party has any factual objections to the above appointments, it is requested that said objections be filed in writing with the undersigned on-or before January 6, 1972.” Eytex did not object to the selection of Burnish or Lincer until after the award was rendered, several months subsequent to the January 6 deadline for objecting to the Lincer or Kaplan appointments. No contention is made that Kaplan, the third arbitrator, was biased.
The arbitration hearing was held April 6,1972 and an award in favor of Stevens, signed by all three arbitrators, was issued on May 6,1972. It was only after receipt of the adverse award that Eytex claimed that the arbitrators were not impartial.
It is undisputed that both Deering and Kenyon, the respective employers of arbitrators Burnish and Lincer, had business dealings with Stevens, the successful party in the arbitration. However, Eytex’s claim of bias rests upon the more specific allegation that such business relationships were substantial, a claim which the Appellate Division found adequately supported by the record. The affidavit of Stevens’ vice-president reveals that the Deering and Kenyon firms between them did some $2.5 million in business with Stevens annually. Moreover, Lincer was the sales manager of Kenyon, and while no claim is made of any actual impropriety in his conduct as arbitrator stemming from this relationship, it could reasonably be inferred *127 that a person in his position might not have been acceptable as an arbitrator if the facts had been disclosed to Bytex.*
The Appellate Division characterized the business relationship in question as substantial. Our courts have held that the failure to disclose such a substantial relationship is grounds to vacate the award under CPLR 7511 and its predecessor (Civ. Prac. Act, § 1462). (Matter of Milliken Woolens [Weber Knit Sportswear], 9 N Y 2d 878, affg. 11 A D 2d 166; Matter of Shirley Silk Co. [American Silk Mills], 257 App. Div. 375; Matter of Knickerbocker Textile Corp. [Sheila-Lynn, Inc.], 172 Misc. 1015, affd. 259 App. Div. 992; cf. Matter of Cross Props. [Gimbel Bros.], 15 A D 2d 913, 914, affd. 12 N Y 2d 806.)
Our decision, however, involves broader considerations as to the proper role to be accorded the arbitration process in the resolution of disputes. This is not the first case to come to this court in which a party to a completed arbitration has sought to overturn the award because an arbitrator failed to make a thorough disclosure of his background. Both our decisions and those of lower courts in such cases demonstrate how difficult it is to draw the line between those undisclosed facts which do and do not support an inference of bias sufficient to vacate the award. (Compare, e.g., Matter of Milliken Woolens [Weber Knit Sportswear], supra; Matter of Shirley Silk Co. [American Silk Mills], supra; Matter of Knickerbocker Textile Corp. [Sheila-Lynn, Inc.], supra, with Matter of Cross Props. [Gimbel Bros.], [4-1] [affd. as a 6-1 decision], supra; Matter of Meinig Co. [Katakura & Co.], 241 App. Div. 406, affd. 266 N. Y. 418; Matter of Perl [General Fire & Cas. Co.], 34 A D 2d 748; Matter of Weinrott [Carp], 32 N Y 2d 190; Matter of Labor Relations Section of Northern N. Y. Bldrs. Exch. v. Gordon, 41 A D 2d 25; see, also, Matter of Baar & Beards [Oleg Cassini, Inc.], 37 A D 2d 106, revd. 30 N Y 2d 649; compare the cases arising under the Federal statute, Commonwealth Corp. v. Casualty Co., 393 U. S. 145; Matter of Sanko S. S. Co. [Cook Ind.], 495 F. 2d 1260 [1973], with Garfield & Co. [Wiest], *128 432 F. 2d 849 [1970], cert. den. 401 U. S. 940; and Cook Ind. v. Itoh & Co. [Amer.], 449 F. 2d 106, cert. den. 405 U. S. 921.) Because arbitration is at bottom a consensual arrangement, resolution of this delicate question of disqualification, which has proved so vexing to the courts, ought to be resolved in the first instance by the parties to the agreement. As Mr. Justice White stated, concurring in Commonwealth Coatings (393 U. S., at p. 151), “ The judiciary should minimize its role in arbitration as judge of the arbitrator’s impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are better informed of the prevailing ethical standards and reputations within their business. ’ ’ This can only be achieved(,if, prior to the commencement of the arbitration, the arbitrator discloses to the parties all facts which might reasonably cause one of them to ask for disqualification of the arbitrator. The AAA, under whose auspices this arbitration was conducted, indorses precisely such an approach, by requiring every arbitrator to “ disclose any circumstances likely to create a presumption of bias or which he believes might dis‘qualify him as an arbitrator. ’ ’ In its formal notice of appointment to arbitrators the AAA underlines the thrust of this requirement by directing that “ any doubt should be resolved in favor of disclosure.” This salutary approach, formalized in the rules of an organization responsible for administering a substantial portion of arbitration work in the State, has thps become part of the custom and usage in arbitration proceedings and is properly a requirement in all arbitrations conducted pursuant to CPLR article 75.
We are mindful of the possibility, stressed- by our dissenting colleagues, that a disgruntled party may belatedly seize upon a claim of bias in an attempt to overturn an unfavorable award. But we conclude that a rule requiring maximum, prehearing disclosure must in the long run be productive of arbitral stability. Had the arbitrators in this case made the proper disclosure, it is unlikely that this case would be here. Rytex would have been in a position to determine in advance of the hearing whether arbitrators Burnish and Lincer had too close a relationship with Stevens to permit the case to be submitted to them. Had Rytex proceeded to arbitration with such knowledge it *129 would not be in a position to later challenge the award on the grounds of bias.
This does not mean that a party to an arbitration may sit idly back and rely exclusively upon the arbitrator’s disclosure. If a party goes forward with arbitration, having actual knowledge of the arbitrator’s bias, or of facts that reasonably should have prompted further, limited inquiry, it may not later claim bias based upon the failure to disclose such facts. While such responsibility to ascertain potentially disqualifying facts does rest upon the parties, the major burden of disclosure properly falls upon the arbitrator. After all, the arbitrator is in a far better position than the parties to determine and reveal those facts that might give rise to an inference of bias. Further, the very nature of the arbitrator’s quasi-judicial function, particularly since it is subject to only limited judicial review, demands no less a duty to disclose than would be expected of a Judge (Commonwealth Corp. v. Casualty Co., 393 U. S., at pp. 148-150, supra; Matter of Labor Relations Section v. Gordon, 41 A D 2d, pp. 27-28, supra). In the present case we do not think that the extent of the relationship of the Deering and Kenyon firms to Stevens was so readily ascertainable to Bytex that it was not justified in relying upon the limited disclosure made by the arbitrators. Nor is there convincing evidence that Bytex came by such knowledge independently or did not act in good faith in seeking to overturn an adverse arbitration award.
We, of course, do not require an arbitrator to reveal every facet of his past (White, J., concurring in Commonwealth Corp. v. Casualty Co., 393 U. S., at p. 151, supra). But if the arbitrator follows reasonable judgment in disclosing potentially disqualifying facts, the number of cases in which alleged bias is subsequently litigated will be small indeed. And in that residuum of cases it is unlikely that the undisclosed facts would be of sufficient magnitude to justify vacating the award.
By our determination we do not hold that any kind of business relationship would disqualify a prospective arbitrator, but we do hold that in the interest of fairness (and to avoid just such a litigation as we deal "with here) all arbitrators before entering upon, their duties should make known any relationship direct or indirect that they have with any party to the arbitration, and *130 disclose all facts known to them which might indicate any interest or create a presumption of bias.
The order of the Appellate Division should be affirmed.

 The record is not entirely clear as to the magnitude of Deering’s relationship to Stevens, nor does it indicate that Burnish’s position with Deering put him in as delicate a position as Lincer’s with Kenyon. We conclude that the relationship between Lincer, his employer Kenyon, and Stevens, is alone adequate to justify the vacation of the award.