Norman A. Stiller, J.
This is a proceeding commenced by the petitioner Bethlehem Steel Corporation (Bethlehem) as a taxpayer of the City of Lackawanna (City) to set aside an arbitration award pertaining to salaries and working arrangements for members of the Lackawanna Police Department (LPD) on the ground that the arbitration panel was improperly and illegally constituted. Upon argument, the City moved to intervene, which motion was granted. The necessity of a separate petition as provided by CPLR 1014 is waived to avoid delay and the court will consider this application as one made pursuant to CPLR 7511.
The gist of the controversy is that Mr. Stanley Janus, the arbitrator appointed by the City in the belief he was associated in interest with the City, had such a direct and consuming personal conflict of interest, contrary to the interests of the City, at the time of the arbitration hearings as to disqualify him as such arbitrator. As a result of said conflict of interest, it is claimed he cast the deciding vote in the arbitration hearings, resulting in a 32% raise in pay for himself as a member of said police department.
This anamoly arose out of compulsory arbitration of a dispute between the intervening petitioner City and the respondent LPD, represented by the Lackawanna Police Benevolent Association (LPBA), relative to wages, fringe and other benefits and conditions of employment. Preliminary steps as provided by the Civil Service Law had taken place, including the appointment by respondent New York Public Employment Relations Board (PERB) of a fact-finder. After several hearings, the fact-finder issued his report on May 12, 1975, containing 24 separate findings, 2 of which were that the duration of the contract should be one year and that police *970 men should receive an increase of 9% and policematrons and cleaners 8%.
The testimony taken herein in open court and the exhibits presented on the hearing are to the effect that by letter of John Collins on behalf of LPBA dated August 6, 1975 addressed to Earl C. Knight as negotiator for the City, confirmation is made of a telephone conversation with Mr. Knight in which both sides had agreed tentatively upon a two-year contract providing for a salary increase of 9% for the first year, retroactive to January 1, 1975 (as per fact-finder report) and 8% for the second year commencing January 1, 1976 with policematrons 1% less raise in each year. Other terms are omitted as not pertinent. The letter concluded as follows: "If you desire to settle on this basis as you did indicate on the telephone on August 5th and 6th please sign the above letter and return to me indicating your acceptance before Aug. 11.”
Apparently a proposed contract was thereafter drafted by Mr. Collins because a letter dated September 2, 1975 written by Mr. Knight on city council stationery addressed to Mr. Collins refers to said draft and suggests changes as to shifts, etc., but contains no disagreement as to salaries. The letter asked for a return call from Collins.
On September 4, 1975, apparently ignoring the council’s letter, Collins petitioned PERB for "compulsory interest arbitration” panel. The petition stated that "at a meeting the LPBA voted to review the findings of the fact finder in order to determine if acceptance was in order. On May 21, 1975, the LPBA voted to accept the award of the fact finder.” The petition continues that the City "attempted to piecemeal the LPBA”, apparently referring to time off and other conditions of work other than salaries. On October 30, 1975, Mr. Knight returned Mr. Collins’ letter marked "read and accepted” but apparently the police chose to proceed with arbitration which may well have been due to the intervening appointment of Janus as arbitrator.
The arbitration requested, provided by subdivision 4 of section 209 of the Civil Service Law, is compulsory, requiring a three-member panel — one appointed by the employer to represent its interests; one appointed by employees to represent their interests and one public member agreed upon by both from a list maintained by PERB.
In response to the petition, Mr. Knight was designated by the City to select its representative arbitrator. Mr. Knight *971 testified that he considered several individuals, including Mr. Fennie, the city comptroller, but eliminated him because his son was a member of the police department. He then considered Stanley Janus who, although formerly a member of the police department as a captain, had left the department with leave on December 4, 1974 to accept appointment from Mayor Bala as safety commissioner. Such commissioner serves at the will of the mayor and, in the event of a change in office of mayor due to election of successor of the opposite political party, the commissioner must anticipate replacement. From the inception of the controversy, prior to the fact finder’s report, Janus had taken an active part in dealing with the police and he was outwardly hostile toward their demands. Mr. Collins testified that Mr. Janus often fought with the police against their demands and upheld the position of the City completely. When the fact finder’s report was published, Mr. Janus agreed with its provisions as to salaries and joined with the City in objection to schedules, leaves, etc. He was in the forefront in espousing the cause of the City and gave many positive assurances that he was fully in accord with the City’s position in every respect and particularly that the proposed raise of 9% and 8% as agreed upon in conversation referred to in letter of August 6, 1975 was entirely fair to the police and that Janus would remain steadfast in the arbitration. Because of these assuring representations and Mr. Janus’ position as safety commissioner, Mr. Knight appointed him as the City’s representative.
On October 10, 1975, the panel was complete but no hearing was had by the arbitrators until November 12, 1975, followed by a hearing on November 24, 1975. They met in executive session on November 24, 1975 and December 1, 1975, culminating in the award which is dated December 10, 1976.
However, in the lapse of time between the appointment of the panel and the first meeting of the arbitrators, the election for Mayor took place on November 4, 1975 and the political complexion of the Mayor’s office changed from Republican to Democrat by a comparatively narrow vote margin (800 out of the total of 13,000). This meant that Janus would be losing his post as commissioner of safety and return to his position as police captain. He now had an overwhelming personal interest of far greater importance than his obligation to the City. His association in interest with the City as contemplated by section 209 of the Civil Service Law was ended. His salary as *972 a captain in the police department on leaving was $12,932. If he voted in accordance with his assurances to the City, he would be receiving $15,233, but if he were to vote along with the police representative arbitrator, he would receive raises of 20% for 1975, plus 10% for 1976, or $17,070 on his return to work on January 1, 1976 with added pension benefits heaped thereon. Also, he must face the reactions of his fellow officers if he did not support their raises.
Mr. Knight was alarmed and complained to PERB and others but he stopped short of demanding a replacement for Janus because Janus assured Knight he would remain steadfast in supporting the position of the City which was unchanged from the letter of August 6, 1975 and the acceptance of October 30, 1975. Further, Mr. Knight was under the impression that it was too late to effect a change. Mr. Knight was certainly naive to be taken in by Mr. Janus’ assurances but his poor judgment, whether unintentional or deliberate, should not deprive the City of a fair arbitration. Mr. Janus’ representations that he would uphold the fact finder’s report, if not false and untrue before the election, were certainly false and untrue after the election. In less than three weeks after the election, he voted with the police representative on all salary matters, contrary to the public panel member from Rochester who voted to uphold the fact finder’s report. I find that nothing was presented at the arbitration hearings sufficient to change Janus’ view.
The arbitration award dealt with only four issues, to wit: (1) sick leave (2) shift preferential (3) salary (4) duration.
The panel was unanimous in its decision as to 1 and 2, but split as to 3 and 4.
As to duration, the difference was immaterial for although the public member voted for a one-year contract instead of two, she signified she would go along with two years if the figures were not excessive.
As to salaries, Janus joined the police representative in voting for raises as follows:
1. A 15% wage increase in patrolman’s salary retroactive to January 1, 1975 for the 1975 year. (The public member voted for the fact finder’s figure of 9%.)
2. A 20% increase for captains, lieutenants and deputy chiefs for the year 1975, retroaction to January 1, 1975. (The public member voted for 9%.)
*973 3. A 10% increase for policematron and police cleaner salaries retroactive to January 1, 1975. (The public member voted for the fact finder’s 8%.)
4. An additional 10% across the board increase for all of the above effective January 1,1976.
As was so cogently said by the public panel member:
"Theoretically, if each is representing the interests of those who selected them and since they are in agreement as to the issues of Salary and Duration; this award should not be necessary. Since the advocate members of the arbitration panel are able to agree it should be possible to refer the issues back to the parties to sign a collective bargaining agreement. This is clearly not the case in this impasse.
"As the Public Panel Member, I must represent the interest of the public and I find that the interests of the citizens of Lackawanna will not be served by this award. I am not unmindful that the police in Lackawanna, as elsewhere, are charged with the difficult and important task of guarding the safety of the public and that this task is heightened by the plight of all large cities and worsened by the impact of a depressed economy. I find the award of the Panel to be especially excessive in light of the uncontroverted fact that on August 6, 1975, the LPBA was agreeable to a two year contract with an across the board salary increase of 9% (8% for police matrons) retroactive to January 1, 1975 for the first year and 8% (7% for police matrons) for the second year commencing January 1, 1976. (City Exhibit E letter to Earl Knight, Negotiator for the City of Lackawanna from Mr. John Collins, Esq., Attorney for the LPBA).
"Cheektowaga, the Town of Hamburg, East Aurora, the Town of Tonawanda, Kenmore and West Seneca have been referred to by the parties during the hearings. All are in the Buffalo metropolitan area and subject to the same trends in cost of living and unemployment. The following collective bargaining agreements covering the period 1974-1975 and 1975-1976 have been made available to the arbitrator by the parties. Figures from East Aurora were not made available to the Chairman.

*974

"The recommendations of 15%, 20% and 10% made by the majority of this Panel are excessive when examined along with the increases in comparable communities.”
This court is aware of cases such as Matter of Stevens & Co. (Rytex Corp.) (34 NY2d 123) to the effect that if the parties know of the conflict before the arbitration proceeding commences, they cannot complain after the award is made. However, such are not determinative of the present situation wherein Mr. Janus intentionally misled the City in promising emphatically to uphold the fact finder’s report and represent the City despite his interest. Such promises and representations as to his state of mind and intentions were false and untrue and were made for the purpose of misleading the City for his own personal benefit and the benefit of his fellow policemen.
I find that at least after the 1975 election, if not before, Mr. Janus knowingly and fraudulently misrepresented his state of mind and his intentions so that the City, relying upon such representations, was harmed thereby and this resulted to Janus’ personal benefit. In no case cited was the conflict of interest so direct and irrefutable.
Janus returned to the police department as captain on January 2, 1976 where he is now employed looking forward to *975 a 32% raise. Although a party to this proceeding, Janus did not testify.
This brings us to the question of whether the petitioner Bethlehem has standing to bring this proceeding as a taxpayer paying approximately 71% of the property taxes of the City of Lackawanna. In other words, Bethlehem would indirectly be paying 71% of the raises involved. CPLR 7511 specifically gives status to an aggrieved taxpayer. Also, section 51 of the General Municipal Law and section 102 of the Civil Service Law are considered authority for granting status to petitioner to bring this proceeding. Furthermore, the City’s intervention in the petition in all respects removes any question of standing.
A collateral matter is worthy of mention here as to whether this decision overrules the decision rendered on January 20, 1976 by the Honorable Roger T. Cook, a Justice of this court, who ordered that the award of the arbitrators herein be implemented. Bethlehem was not aware of that proceeding and was not a party thereto. The legality of the arbitration panel was not at issue. Justice Cook in the final paragraph of his order provided as follows: "Ordered that this order in no way limits respondents rights under 7511 CPLR.” Furthermore, Justice Cook signed the order to show cause herein, returnable before the undersigned.
All parties agree that the police herein are entitled to a raise. There is disagreement, however, as to whether the raise should exceed the fact finder’s report as amplified by the letter of August 6, 1975 and this should be settled by proper arbitration. I have determined that the arbitration which did take place was improper and it is hereby annulled and I direct that new arbitration take place with proper representation for all parties.
The City had agreed to the wage increases as contained in the letter of August 6, 1975 to the effect that: "a salary increase of 9% retroactive to Jan. 1, 1975 for the first year (1975) and 8% for the second year commencing with Jan. 1, 1976. Also you will allow the police matrons 8% retroactive to Jan. 1, 1975 and 7% for the second year.”
In order to afford the LPD some immediate relief, this court suggested that the police accept the stipulated salary without prejudice to their rights to seek further relief in the new arbitration as ordered herein. The LPD refused. This court is *976 not empowered to direct such partial judgment. The City may,, however, wish to consider such implementation unilaterally.