172 N.J. Super. 186 (1980)
411 A.2d 709
BARCON ASSOCIATES, INC., PLAINTIFF-APPELLANT,
v.
TRI-COUNTY ASPHALT CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1979.
Decided February 1, 1980.
*187 Before Judges FRITZ, KOLE and LANE.
J. William Barba argued the cause for appellant (Shanley & Fisher, attorneys; J. William Barba and Charles A. Reid, III, on the brief).
Irwin I. Kimmelman argued the cause for respondent (Kimmelman, Wolff & Samson, attorneys; Ronald E. Wiss on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
The question here is whether in matters of tripartite arbitration confirmation of the arbitrators' award should be denied because of "evident partiality" in all cases in which there has been an undisclosed, substantial, ongoing business relationship between an arbitrator and one of the parties. The trial judge answered this question in the affirmative and in a well reasoned and articulate opinion in which the factual milieu is adequately stated, vacated the award. 160 N.J. Super. 559 (Law Div. 1978). This appeal followed. We affirm.
We have been cited to no other New Jersey case considering the precise question and we have found no reported opinions. The problem is treated at some length in Annotation, "Setting *188 aside arbitration award on ground of interest or bias of arbitrators," 56 A.L.R.3d 697, especially § 6 at 727 (1974). The difficulties inherent in the matter are demonstrated by the fact that they have even produced apparently different conclusions in the same jurisdiction. In Astoria Medical Group v. Health Ins. Plan, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (Ct.App. 1962), the court of last resort in New York considered the matter one of contractual assent and, refusing to "rewrite their contract" (227 N.Y.S.2d at 406, 182 N.E.2d at 88), determined that any arbitrator could be partisan as long as he was not dishonest. In J.P. Stevens & Co., Inc. v. Rytex Corp., 34 N.Y.2d 123, 356 N.Y.S.2d 278, 312 N.E.2d 466 (Ct.App. 1974), the same court 12 years later held, without even mentioning Astoria Medical Group v. Health Ins. Plan, that "all arbitrators before entering upon their duties should make known any relationship direct or indirect that they have with any party to the arbitration, and disclose all facts known to them which might indicate any interest" (356 N.Y.S.2d at 283, 312 N.E.2d at 469), or grounds would exist to vacate the award on the basis of "a presumption of bias." (Ibid.; emphasis supplied) Each of these cases had vigorous dissents by a substantial minority. In each the majority opinion only garnered four of the seven votes.
The substantial policy arguments favoring each of the differing views are readily apparent. On the one hand, it is certainly so that as a favored remedy, voluntarily chosen by the parties, a presumption of correctness in all respects should be accorded an arbitration award and it should not be overturned except upon a clear demonstration of statutory violation. As pointed out in Astoria the court's role might very properly be "limited to the enforcement of the terms of the contract" in connection with determinations in this "private tribunal" which "the parties themselves [have chartered] ... for the resolution of their disputes." 227 N.Y.S.2d at 403, 182 N.E.2d at 87. On the other hand, the quotation from the dissent there of Chief Judge Desmond appearing in the trial court opinion here (160 N.J. Super. *189 at 568) is most compelling. Beyond this, it seems reasonable to expect that substantial justice  the lodestar of human interrelationships  might most surely be produced in a forum where the scales are not unfairly predisposed by an affinity known to one but not known (or reasonably knowable) to the other. Unquestionably this latter consideration contributed to the vacation of the arbitration award in Johnston v. Security Ins. Co., 6 Cal. App.3d 839, 86 Cal. Rptr. 133 (D.Ct.App. 1970).
Whatever the fact of the matter before us, we would be loath to countenance a mismatch on the sole ground that one party had been a little more astute or cunning in his contracting or on the fortuitous basis that neither had given the matter much timely forethought.
It is the balancing of these reasons and others set forth in the opinion of Judge Stanton in the trial court that causes us to concur with his views. Our concern for the rightness in this way of doing business, open, aboveboard and candid, reflects a similar conclusion expressed thusly in Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301, reh. den. 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812 (1969):
... It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias. [at 148-149, 89 S.Ct. at 339]
The vice is not the inherence of possible  as contrasted with probable  bias, a difference well isolated in the dissent in J.P. Stevens & Co., Inc. v. Rytex Corp., supra, 356 N.Y.S.2d at 285, *190 312 N.E.2d at 471. The vice is any appearance of bias sufficient to discredit this useful adjudicatory tool sanctioned in the law and controlled by its statutes. Commonwealth Coatings Corp. v. Continental Cas. Co., supra, 393 U.S. at 150, 89 S.Ct. at 340; Northwest Mechanical, Inc. v. Public Utilities Comm'n, 283 N.W.2d 522 (Minn.Sup.Ct. 1979); N.J.S.A. 2A:24-1 et seq. Accordingly, Judge Stanton looked for independence and impartiality in the arbitrators uncompromise by "the appearances inherent in this situation" (160 N.J. Super. at 571), i.e., the undisclosed relationship between Vincent A. Spatz and Barcon Associates, Inc., and so do we.
So that we not be misunderstood, we record our agreement with the following from the concurrence of Mr. Justice White in Commonwealth Coatings, supra:
... The Court does not decide today that arbitrators are to be held to the standards of judicial decorum on Article III judges, or indeed of any judges. It is often because they are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. [Citation omitted.] This does not mean the judiciary must overlook outright chicanery in giving effect to their awards; that would be an abdication of our responsibility. But it does mean that arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial. [393 U.S. at 150, 89 S.Ct. at 340]
We do not think the candor thus thought to be important and necessary should be left to the result of adverse probing or serendipity. If the more perfect results sought by the rule we here approve are to be fully attained, the disclosure must be voluntarily undertaken by the arbitrator or the party who has nominated him. With the Supreme Court in Commonwealth Coatings, supra, we can perceive no undesirable harm at all resulting from disclosure. To the contrary, we are satisfied the requirement will enhance the product of the procedure.
*191 In the event of nondisclosure, we believe the rule established in Richco Structures v. Parkside Village, Inc., 82 Wis.2d 547, 263 N.W.2d 204 (Sup.Ct. 1978) is sound:
... When there is nondisclosure at the outset of arbitration, the test for vacatur on the ground of evident partiality is whether the reasonable person, as a party to the arbitration proceeding, upon being advised of the undisclosed matters, would have such doubts regarding the prospective arbitrator's impartiality that he or she would investigate further, would demand that the arbitration be conducted on terms which would provide checks on the arbitrator's exercise of discretion, or would take other protective measures to assure an impartial arbitration and award. [263 N.W.2d at 213]
Considered in this light, the judgment below is correct and it is affirmed. No costs.