OPINION OF THE COURT
William L. Underwood, Jr., J.
The matter sub judice is an action sounding in breach of contract, fraud and violation of the Franchise Sales Act (General Business Law §§ 683, 687, 691) arising from the disputed execution of a franchise agreement. The contract between the parties provided for disagreement to be resolved via arbitration. When the petitioners and respondent began arbitration proceedings, respondent attempted to terminate the franchise. Petitioners obtained a preliminary injunction to preserve the franchise during the pendency of the arbitration (see, mem decision, dated Oct. 27, 1997). This decision encompasses three applications: respondent’s motion to confirm the award of the arbitrator, petitioners’ motion for a further injunction and petitioners’ motion to punish respondent for contempt of our temporary restraining order dated August 3, 1999. These applications will be decided ad seriatim.
The use of alternative dispute resolution (ADR) is very much the fashion these days. Forgetting Lord Coke’s admonition Via trita est tutissima[1] (10 Coke 142), those with disputes are officially encouraged to forsake the courts in favor of a veritable cornucopia of alternatives. Mediation, arbitration, and mini-trials seek to displace the Bench and Bar. A person styled a “neutral” often acts as a Judge, yet is not bound by stare decisis or the wisdom of 2,000 years of common and civil law. It has one advantage, its adherents proclaim. An advantage that outweighs all defects. It is fast. The instant case proves the hollowness of this assertion.
*404 This case arose from a dispute which occurred over three and one-half years ago. Had the disagreement been resolved exclusively through the courts, it would probably have gone to verdict before a jury by now. Instead, this arbitration agreement spawned actions in Federal and State courts. Petitioners contend, and respondent does not controvert, that they appeared 40 times before the arbitrator. This is judicial economy? Instead of the aforementioned judicial substitutes, which should be met with obsta principiis, the obvious step to speeding up the resolution of disputes is simply to provide more Judges to hear them. A jurist, embracing the doctrine of judiéis officium est opus diei in die perficere,[2] is the proven remedy to the ills addressed by unproven ADR.
Respondent has moved to confirm the arbitrator’s award of July 9, 1999. Petitioners contend that the award is tainted by improprieties and should be vacated. Statute allows vacatur of an arbitrator’s decision under the following circumstances:
“(i) corruption, fraud or misconduct in procuring the award; or
“(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or
“(in) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or
“(iv) failure to follow the procedure of [article 75], unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection” (CPLR 7511 [b] [1]).
The burden is on the party challenging the arbitration results to demonstrate that any of the foregoing occurred (Siebert & Co. v Ponmany, 190 AD2d 544 [1st Dept 1993]).
The question of whether the award of the arbitrator, Mr. Rosen, shall be confirmed or vacated turns on the issue of impartiality. It is not disputed that Mr. Rosen had an ex parte communication with Mr. Bailey, the outside general counsel to RE/MAX of New York, Inc. In disclosing same to petitioners, the respondent and arbitrator acknowledged that Mr. Bailey had “several” conversations with the arbitrator and that Mr. Bailey may be called as a witness. Subsequently, however, Mr. Bailey appeared as co-counsel.
*405 Unhindered by the Code of Judicial Conduct, an arbitrator who is familiar with the parties in a controversy may continue to preside under certain circumstances (compare, 22 NYCRR 100.3 [B] [6]; [E]). Rule 19 of the Commercial Arbitration Rules of the American Arbitration Association requires an arbitrator to disclose “any circumstance likely to affect impartiality.” The parties may waive any objection to the arbitrator’s perceived lack of impartiality. “A party who knows of a relationship between his adversary and the arbitrator and nevertheless assents to the choice of that arbitrator waives his right to later object” (Matter of Lincoln Graphic Arts v Rohta/New Century Communications, 160 AD2d 871, 872 [2d Dept 1990], citing Matter of Siegel [Lewis], 40 NY2d 687; Matter of State Wide Ins. Co. v Klein, 106 AD2d 390). In order for this edict to remain viable, however, the disclosure must be comprehensive (see, Matter of Stevens & Co. [Rytex Corp.], 34 NY2d 123, 128 [1974]). In the matter at hand, we find that the arbitrator did not fully disclose the nature of his communications with Mr. Bailey. Moreover, the cursory nature of the statement which the arbitrator made would not “reasonably prompt further limited inquiry” on the part of the petitioners (Matter of Lincoln Graphic Arts v Rohta/New Century Communications, supra, at 872). Accordingly, they will not be penalized for failing to undertake an investigation of a matter which should have been fully revealed ab initio.
Therefore, the motion to confirm the arbitration award is denied. The arbitrator’s award dated July 9, 1999 is hereby vacated and set aside. The parties shall proceed to arbitration within 45 days from service of a copy of this decision. The parties are directed to choose a different arbitrator.
We now turn to petitioners’ application for a preliminary injunction. The arbitrator’s decision is now a nullity. Indeed, since it was never confirmed, it never possessed the dignitas of a judgment or order. This leads us to conclude that the same factors which compelled the granting of an injunction in our October 27, 1997 decision never extinguished. The request for a further injunction is moot. Instead, both parties are advised that our original injunction shall continue.
Finally, the court must address the most serious application before us, namely, the motion to punish for contempt. Petitioners aver that respondent and its president, Mr. Henry Weber, deliberately violated our August 3, 1999 temporary restraining order. Specifically, it is alleged that respondent’s president entered upon the premises of petitioners’ business and *406 contacted various advertisers and directed them not to accept the petitioners’ advertisements. Respondent counters that it was entitled to act in this fashion because the franchise had terminated prior to the issuance of the temporary restraining order.
Section 750 (A) (3) of the Judiciary Law authorizes a court to punish as a criminal contempt “[w]ilful disobedience to its lawful mandate.” In order to establish civil contempt it must be proven that a party “violated a lawful and unequivocal court order of which he had knowledge and, in doing so, prejudiced the [other party’s] rights” (Matter of Kelly v Curcio, 198 AD2d 353 [2d Dept 1993], citing Judiciary Law § 753 [A]; Matter of Department of Envtl. Protection v Department of Envtl. Conservation, 70 NY2d 233, 239-240; Matter of McCormick v Axelrod, 59 NY2d 574, 583; see also, Pereira v Pereira, 35 NY2d 301, 308; Educational Reading Aids Corp. v Young, 175 AD2d 152; Matter of Fishel v New York State Div. of Hous. & Community Renewal, 172 AD2d 835, 837). The petitioners’ moving papers have made a prima facie showing that respondent engaged in such conduct. Respondent’s protestations to the contrary, the franchise did not extinguish upon the issuance of the arbitrator’s award since it was never confirmed. We note that the Second Department has held that an unconfirmed arbitrator’s award can have the force of collateral estoppel (Rockland County v Aetna Cas. & Sur. Co., 129 AD2d 606 [2d Dept 1987]). In our opinion, however, the decision in Rockland is distinguishable because the instant case involved the issuance of a preliminary injunction which had not been vacated. It was the court’s exclusive prerogative to determine when its orders applied. Self-help was not an option. It remains to be seen whether the respondent’s error shall be treated as contempt. This is best resolved at a hearing.
Therefore, petitioners’ motion for an order adjudicating respondent as being in contempt is granted to the following extent: The parties are directed to appear at Supreme Court, Part XIV, Griffing Avenue, Riverhead, New York, on January 11, 2000, at 9:30 a.m., for purposes of a hearing at which time we shall determine if the respondent shall be held in civil and/or criminal contempt.

. The trodden path is the safest.

. It is the duty of a Judge to finish the work of each day within that day.