**POWER SERVICES ASSOCIATES, INC., Plaintiff,**

v.

**UNC METCALF SERVICING, INC., Defendant.**

**No. 1:04–CV–952–WSD.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 29, 2004.

Deborah Shelles Cameron, Gary S. Freed, Chamberlain Hrdlicka White Williams & Martin Atlanta, GA, for Plaintiff.

Kevin T. O'Sullivan, Mark S. Marani, Cohen Pollock Merlin Axelrod & Small, Atlanta, GA, for Defendant.

### ORDER

DUFFEY, District Judge.

Before the Court are Power Services Associates, Inc.'s ("PSA") Complaint in Application to Vacate Arbitration Award [04–887, 1], UNC Metcalf Servicing, Inc.'s ("UNC") Petition to Confirm Arbitration Award [04–952, 1 (hereafter all cites are to pleadings filed in 1:04–cv–952, the docket number for the consolidation of the cases referenced in the caption) ], PSA's Motion to Vacate Arbitration Award [11] and memoranda in support of its motion to vacate arbitration award and opposing UNC's motion to confirm [13, 17], and UNC's Motion to Confirm Arbitration Award [12] and memoranda supporting its motion to confirm and opposing PSA's motion to vacate [14, 15].

### Background

This matter is the consolidation of two cases resulting from the arbitration of a dispute between PSA and UNC (1:04–cv–887 and 1:04–cv–952). The dispute arose under an Asset Purchase Agreement between PSA and UNC for the sale of turbine equipment from UNC to PSA (the "Agreement"). PSA claimed it was entitled under the Agreement to the return of a $200,000 deposit when PSA was unable to conclude the purchase of the turbine equipment. UNC ultimately sold the turbine equipment to another party and claimed it was not obligated to return the deposit.

The Agreement contained an arbitration clause which required the parties to arbitrate any disputes arising under the contract and in October 2002, PSA demanded arbitration. [11 at 5]. In its demand, PSA asserted claims against UNC, UNC's parent—General Electric Company, and GE Aircraft Engineering (General Electric and GE Aircraft Engineering collectively referred to as "GE"). PSA alleged, among other things, that it was entitled to the return of its deposit from PSA. It further alleged that UNC and GE (even though GE is not a party to the Agreement) had conditioned the sale of the turbine equipment on certain resale restrictions which PSA alleged violated the antitrust laws. [04–887, 1 at 4; 11 at 5].

The Arbitration was filed with and conducted under the supervision of the American Arbitration Association ("AAA"), as required by the Agreement. [11 at 5]. The AAA submitted to the parties a list of potential arbitrators. From the list, PSA and UNC selected Mr. David P. Bruton[1] to arbitrate the dispute. Mr. Bruton is a lawyer at Drinker Biddle Reath, LLP, a large Philadelphia-based law firm. During his tenure at Drinker Biddle,[2] Mr. Bruton had served as head of its litigation practice and as its managing partner before assuming an "of counsel" position in the firm. [14 at 2]. When he arbitrated this dispute at issue here, he had over forty years of practice experience in a wide variety of areas, including arbitration of commercial and construction disputes. [14 at 2–3].

After he was selected, but before he commenced his arbitration duties, Mr. Bruton made the following disclosure to the AAA, which he requested be communicated to PSA and UNC:

My firm is currently engaged in a number of litigation assignments on behalf of the General Electric Company or one of its Subsidiaries. While I am not personally involved in any of these engagements, and none of them involve GE Aircraft Engineering, they may well create the appearance of potential conflict of interest that would persuade a party to the above arbitration to seek another arbitrator. I therefore ask that you provide the parties with a copy of this disclosure and let me know in due course how the parties wish to proceed. [04–887, 1, Ex. 1]

This disclosure was communicated to the parties in a January 28, 2003 letter from the AAA. *Id.*

The parties first met with Mr. Bruton in March 2003. Neither PSA nor UNC asked Mr. Bruton about his firm's representation of GE or any of its subsidiaries. Both parties agreed that his disclosure did not affect their decision for him to arbitrate the dispute. [14 at 3].

Following the initial meeting with Mr. Bruton, the parties conducted discovery. PSA apparently requested information about the price at which the turbine equipment was sold after PSA did not conclude the purchase pursuant to the Agreement. PSA noted that UNC did not produce many documents on the sale price reenforcing PSA's belief that UNC "had not done much to obtain a favorable price."[3] [11 at 8]. PSA cites the production response, the deposition of an individual involved in the equipment sale who stated she did not keep or discarded documents that related to the sale effort, and the opinion of an expert retained by PSA as evidence that UNC did not sell the turbine equipment for a commercially reasonable price. [11 at 9]. PSA included this issue in the arbitration.

The arbitration was held on September 10 and 11, 2003, and included witness testimony and the presentation of other evidence. [14 at 4]. PSA dismissed its antitrust claims at the close of the evidence because of the absence of documents from UNC and GE and because "PSA and its counsel did not believe that Mr. Bruton could fail, after post-hearing briefing, to

---

1. The arbitration provision required the parties to select three arbitrators. PSA explained: "To save expense, the parties agreed to have the dispute resolved by one arbitrator." [11 at 5].

2. Mr. Bruton apparently has spent most of his legal career at Drinker Biddle.

3. PSA notes the Agreement provided for a sale price of $3,700,000. When PSA did not conclude its purchase, the equipment was sold by UNC to a third party for $3,125,000.

see that UNC was defenseless on the issues of valuation and mitigation of damages." [11 at 11]. The parties submitted "extensive" post-hearing briefing after the arbitration hearing. *Id.* On December 14, 2003, Mr. Bruton issued his partial interim award. In the award the arbitrator denied PSA's claims against UNC and dismissed the claims against GE on the grounds it was not party to the Agreement. The arbitrator, citing § 6.16 of the Agreement, also found that UNC was the prevailing party in the arbitration and thus was entitled to recover its attorneys' fees and costs. He set out a schedule for UNC to submit its request for fees and costs and for PSA to file its response to the request. [04–887, 1, Ex. 3]. On January 22, 2004, Mr. Bruton issued his final arbitration award reaffirming his December 10, 2003 interim award and awarding to UNC attorneys' fees and expenses in the amount of $146,099.80.

On or about March 17, 2004, Mr. George F. Burns, one of PSA's lawyers involved in the arbitration,[4] conducted an internet search using the Google search engine. [04–887, 1 at 5]. The search pointed him to Drinker Biddle's website where he read an article discussing Drinker Biddle's representation of the National Collegiate Athletic Association ("NCAA"). *Id.* The article referenced a 1964 antitrust case in Kansas City in which Drinker Biddle represented GE. That article noted that Mr. Bruton represented GE in the 1964 action. The article focused on Mr. Bruton's continuing representation of the NCAA. *Id.,* Ex. 2.

On March 31, 2004, PSA filed with this Court its Complaint in Application to Vacate Arbitration Award. [04–887, 1].[5] On April 6, 2004, UNC filed its Petition to Confirm the award. [04–952, 1]. On May 21, 2004, this Court consolidated the two actions. [7]. On June 4, 2004, PSA filed its Motion to Vacate the award [11], and UNC also filed its Motion to Confirm the award [12]. PSA has filed its memoranda in support of its efforts to vacate the award and opposing UNC's motion to confirm. [11, 13, 17]. UNC has filed its memoranda supporting its motion to confirm and opposing PSA's motion to vacate. [12, 14, 15].[6] PSA's motion to vacate and opposition to confirmation are based on two grounds. First, it contends the arbitrator failed to disclose that he previously represented GE and this failure was materially misleading.[7] [11 at 13]. Second, it claims the award was not supported by the evidence. *Id.*

UNC contends that the disclosure Mr. Bruton made was sufficient and that PSA has not and cannot show there was "evident partiality" on the part of the arbitrator or that the arbitrator engaged in any other misbehavior by which the rights of any party were prejudiced, as required by section 10 of the Arbitration Act. [14 at 5]. There being no grounds to vacate, UNC

---

4. Mr. Burns was an addressee on correspondence sent by the AAA in connection with the arbitration and he is listed on the pleadings submitted to this Court as outside counsel for PSA.

5. The parties agree this Court has jurisdiction over this matter and that venue is proper in this District.

6. Each party makes essentially the same arguments to support their motion and to oppose that of the other party.

7. PSA also claims it does not know the nature or duration of the attorney-client relationship between Mr. Bruton and GE and argues it is entitled to investigate the relationship now. For the reasons discussed hereafter, the Court does not believe further information about the relationship is necessary to decide the motions before the Court.

argues this Court must confirm the award. [12].

### Discussion

Section 9 of the Federal Arbitration Act ("FAA") provides that where a party to an arbitration applies to a court for an order to confirm an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. The relevant portions of section 10 of the FAA provide that a court may vacate an award

.    .    .    .    .

(2) [w]here there was evident partiality or corruption in the arbitrators, or either of them;

(3) [w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced ....

*Id.* § 10(a).

■ PSA claims two grounds for vacating the award under section 10. First, and principally, PSA claims Mr. Bruton failed to disclose his representation of GE in 1964 and this disclosure failure requires vacation of the award under section 10. It next generally claims there is insufficient evidence to support the arbitrator's award. The court discusses first PSA's claim based on the arbitrator's failure to disclose the 1964 engagement.

In *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), the Supreme Court recognized that Congress intended for arbitrations to be conducted by impartial arbitrators. The Court observed:

we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.

*Id.* at 149, 89 S.Ct. 337. The *Commonwealth Coatings* court noted that the rules of the AAA provide:

[a]t the time of receiving his notice of appointment, the prospective Arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator.[8]

*Id.* (quoting AAA Rules, Section 18). The rule continues by requiring the AAA to disclose this information to the parties so they can evaluate whether to waive any objection to the arbitrator. *See also, Seligman v. Allstate Ins. Co.,* 195 Misc.2d 553, 557, 756 N.Y.S.2d 403 (2003) (arbitrator required to disclose any circumstance likely to create presumption of bias); *J.P. Stevens & Co., Inc. v. Rytex Corp.,* 34 N.Y.2d 123, 128, 356 N.Y.S.2d 278, 312 N.E.2d 466 (1974) (before proceeding, arbitrator should disclose facts which might reasonably cause one of the parties to ask

---

**8.** This requirement currently is embodied in Rule 16 of the Commercial Rules of the AAA. The current rule provides in section (a): "Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence ...." Similarly, Canon II of the AAA provides for disclosure of: "(2) any known existing or past financial, business, professional or personal relationships which might reasonably affect impartiality or lack of independence in the eyes of any of the parties."

for disqualification). Relying on *Commonwealth Coatings, Seligman, J.P. Stevens & Co.*, and section 18 (now section 16) of the AAA rules (hereinafter referred to as "Rule 16"), PSA requests this Court to impose a rule requiring the disclosure by an arbitrator of "all past attorney-client relationships between any prospective arbitrator and a party to the arbitration" because "no other benchmark is workable." [11 at 19]. What PSA requests is inconsistent with the authorities upon which PSA relies. Moreover, the disclosure in this case fully complied with the arbitrator's disclosure obligations, put PSA on notice of the relevant potential impartiality, and PSA elected to waive its objection.

*Commonwealth Coatings, Seligman, J.P. Stevens & Co.*, and Rule 16 impose an important but qualified disclosure duty. An arbitrator is required to disclose those dealings "that might create an impression of possible bias" (*Commonwealth Coatings* at 149, 89 S.Ct. 337), which "may reasonably support an inference of bias" (*Seligman* at 557, 756 N.Y.S.2d 403), "reasonably cause" a party to request disqualification (*J.P. Stevens & Co.* at 128, 356 N.Y.S.2d 278, 312 N.E.2d 466), or "reasonably affect impartiality or lack of independence" of the arbitrator (Rule 16). *Merit Insurance Company v. Leatherby Insurance Company*, 714 F.2d 673 (7th Cir.1983) is instructive on the analysis required. In *Merit Insurance Company*, the District Court set aside an earlier judgment confirming an arbitration award because the party moving to vacate discovered after the award had been rendered that an arbitrator had once worked for the current president of the opposing party to the arbitration fourteen years prior to the arbitration and when the president worked at a different company. In reversing the District Court's decision to vacate, Judge Posner stated:

no one supposes that either the Commercial Arbitration Rules or the Code of Ethics for Arbitrators requires disclosure of every former social or financial relationship with a party or a party's principals.... [T]he test ... is whether, having due regard for the different expectations regarding impartiality that parties bring to arbitration than to litigation, the relationship between [the arbitrator and the party's president] was so intimate-personally, socially, professionally, or financially-as to cast serious doubt on [the arbitrator's] impartiality.

*Id.* at 678–80. The Seventh Circuit noted the length of time since the relationship had ended—fourteen years—and that the arbitrator did not have a financial stake in the outcome of the arbitration in ordering the District Court to reinstate its earlier judgment confirming the arbitration award.

PSA claims the arbitrator's failure to disclose his 1964 representation violated his disclosure obligations. The arbitrator disclosed his firm's current and substantial representation of GE and put the parties on notice of the potential for the appearance of his impartiality if he served as the arbitrator. That he did not specify his firm's involvement in the 1964 representation or his personal involvement in that case does not invalidate the arbitrator's disclosure or undermine that the arbitrator clearly and unequivocally advised the parties of his firm's active attorney-client relationship. The 1964 case, thirty-nine years removed from the arbitration, does not create an impression, reasonable inference or presumption of bias and it cannot be used as a grounds to vacate the award.

What the arbitrator disclosed here is what the cases, AAA Rules and Canons require. He disclosed a relationship between a party to the arbitration, even though that party was not one to the

Agreement under which the dispute arose. The relationship which was disclosed stated an ongoing, fee-producing attorney-client relationship between Drinker Biddle, Mr. Bruton's firm for more than forty years and GE. [04–887, 1, Ex. 1]. The disclosure further stated Mr. Bruton's belief that this current relationship with GE raised an issue of a potential conflict of interest, thus emphasizing for the parties the issue the relationship presented. *Id.* It was this current and substantial relationship between the arbitrator and GE that was required to be disclosed under the relevant legal authorities and by the AAA rules because it was this relationship that raised an issue of impartiality.[9]

■ Having fully disclosed this significant, current relationship and drawing attention to it, PSA failed to inquire into it further. Although the parties met before the arbitration proceedings began, PSA apparently did not ask about the nature or extent of the existing relationship or the arbitrator's personal representation of GE. Based on the disclosure made, PSA waived any bias it presented and proceeded with the arbitration. As the court in *J.P. Stevens & Co.* noted: "If a party goes forward with arbitration, having actual knowledge of the arbitrator's bias, or of facts that reasonably should have prompted further, limited inquiry, it may not later claim bias based upon the failure to disclose such facts." 34 N.Y.2d at 129, 356 N.Y.S.2d 278, 312 N.E.2d 466; *see also Health Servs. Mgmt. Corp. v. Hughes,* 975 F.2d 1253 (7th Cir.1992) (waiver of right to object to arbitrator on basis of prior business relationship with party); *Swift Indep. Packing Co. v. District Union Local One,* 575 F.Supp. 912, 916 (N.D.N.Y.1983) (waiver of alleged close personal relationship between arbitrator and party's counsel; "plaintiff made a calculated decision not to

object to the alleged bias of [the arbitrator] and now seeks to avoid the consequences of what proves to have been a tactical error").

■ Even if the disclosure should have been made, PSA must still bring itself within the statute to vacate the arbitration award by demonstrating "evident partiality" or "misconduct." *See* 9 U.S.C. § 10(a). "A party seeking to vacate an arbitration award for bias bears a heavy burden of proof." *Drexel Burnham Lambert Inc. v. Pyles,* 701 F.Supp. 217, 220 (N.D.Ga.1988) (citing *Saxis Steamship Co. v. Multifacs Int'l Traders, Inc.,* 375 F.2d 577, 582 (2d Cir.1967)). "The appearance of impropriety alone is insufficient; a party seeking to vacate the award must establish facts that create a reasonable impression of partiality." *Id.* (citing *Toyota of Berkeley v. Auto. Salesman's Union,* 834 F.2d 751, 755 (9th Cir.1987)); *Al–Harbi v. Citibank, N.A.,* 85 F.3d 680, 683 (D.C.Cir. 1996) ("the burden on a claimant for vacation of an arbitration award due to 'evident partiality' is heavy, and the claimant must establish specific facts that indicate improper motives on the part of an arbitrator."). "The alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc.,* 146 F.3d 1309, 1312 (11th Cir.1998) (citations omitted); *see also Merit Insurance Co.,* 714 F.2d at 681 ("the circumstances must be powerfully suggestive of bias"). PSA has failed to meet its burden under section 10 of the FAA to show the arbitrator was partial or otherwise misbehaved so as to prejudice the rights of any party to the arbitration.

The arbitrator disclosed facts indicating a significant relationship between the arbi-

9. The cases discussed in PSA's brief on the issue of disclosure generally involved matters

where a significant current business relationship was not disclosed.

trator's firm and GE. This disclosure evidenced, as noted by the arbitrator in the disclosure, a possible conflict of interest. PSA, however, made no further inquiry and elected to proceed with the arbitration in the face of information suggesting at least an appearance of partiality on the part of the arbitrator. The information found during the internet search regarding the arbitrator's representation of GE in 1964 while he was a lawyer at Drinker Biddle was not required to be disclosed because it does not provide an inference of impartiality nor does it provide an independent or different grounds under section 10 for vacating an award. It was too remote to do so. *See, e.g., Merit Insurance Co.*, 714 F.2d at 683 (fourteen years since relationship ended was too remote under section 10; "[w]e do not want to encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators in an effort to uncover evidence of a former relationship with the adversary."). Here, the arbitrator followed reasonable judgment in disclosing potentially disqualifying facts and the disclosure made prevents PSA from vacating the award under section 10.

◼ PSA's second ground to vacate is that there is insufficient evidence to sustain the arbitration award. In *Major League Baseball Players Association v. Garvey*, 532 U.S. 504, 532 U.S. 1015, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001), the Supreme Court stated about arbitration proceedings that "courts have no business weighing the merits of the grievance or considering whether there is equity in a particular claim ... [for w]hen the judiciary does so, it usurps a function which is entrusted to the arbitration tribunal." *Id.* at 509–10, 121 S.Ct. 1724 (citations omitted). A court should set an arbitration award aside only in "very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Limiting court review of an arbitration award promotes the benefits of reduced delay and expense and makes sure arbitration is not just a step in ultimate judicial review of a dispute. *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir.1994). This is the policy of the FAA. This court will not second guess the arbitrator's decision. Under section 9, confirmation is a summary proceeding and this Court must grant UNC's motion to confirm unless it is subject to being vacated under the FAA. *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir.1989). PSA failed to meet its burden under section 10 to vacate the award and it therefore must be enforced.

For the reasons stated above,

**IT IS HEREBY ORDERED** that PSA's Complaint in Application to Vacate Arbitration Award and Motion to Vacate are **DENIED**, UNC's Petition to Confirm Arbitration Award and Motion to Confirm Arbitration Award are **GRANTED**, and judgment is entered in favor of UNC in the amount of $146,099.80.