■ In the Matter of SOMA PARTNERS, LLC, Appellant, v NORTHWEST BIOTHERAPEUTICS, INC., Respondent. [838 NYS2d 519]—

Judgment, Supreme Court, New York County (Carol Edmead, J.), entered January 9, 2006, which, insofar as appealed from, denied and dismissed the petition to vacate an arbitration award dated May 23, 2005, finding petitioner entitled to no more than $6,000 in contractual fees from respondent, and confirmed the award, unanimously reversed, on the law, without costs, the petition granted, the award vacated and a new arbitration directed.

At issue in the underlying arbitration was whether, and to what extent, petitioner is entitled to contractual finder's fees from respondent as a result of an investment made by nonparty Toucan Capital Corp. (Toucan), a Maryland-based venture capital firm. Petitioner contends that the investment was due to its efforts, while respondent asserts that it independently reached the deal with Toucan, largely through direct discussions with Toucan's managing director, Linda Powers.

At the outset of the arbitration, petitioner submitted a list of potential conflicts, which included Toucan and Powers; respondent listed Powers as a witness, to testify regarding the timing and manner of the introduction to, negotiations with, and investment by Toucan. The American Arbitration Association-designated arbitrator, a partner in the New York office of a large firm, circulated the conflicts lists through the firm. He received a response from an "of counsel" in the firm's Washington, D.C. office stating that, through his service as a member of the board of directors of the Maryland Technology Development Corporation (Tedco), a quasi-governmental agency, he personally knew Powers and that Tedco "has contractual and investment relationships with Toucan Capital." The arbitrator did not make any further inquiry and reported to the parties that he had no conflict to disclose.

Powers was one of two witnesses called by respondent during the arbitration proceeding, at the conclusion of which the arbitrator determined that, under the parties' agreement, petitioner was entitled to $6,000 in fees for procuring two loans by Toucan, but not entitled to any fee for a subsequent $6 million investment.

Pursuant to CPLR 7511 (b) (1) (ii), an arbitration award may be vacated on the ground of the "partiality of an arbitrator appointed as a neutral." "Because arbitration is at bottom a consensual arrangement," resolution of whether an arbitrator should be disqualified for partiality "ought to be resolved in the first instance by the parties to the agreement" (*Matter of J. P. Stevens & Co. [Rytex Corp.]*, 34 NY2d 123, 128 [1974]). Thus: " 'The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are better informed of the prevailing ethical standards and reputations within their business.' This can only be achieved if, prior to the commencement of the arbitration, the arbitrator discloses to the parties all facts which might reasonably cause one of them to ask for disqualification of the arbitrator" (*id.*, quoting *Commonwealth Coatings Corp. v Continental Casualty Co.*, 393 US 145, 151 [1968, White, J., concurring]). Justice White, in his concurrence in *Commonwealth Coatings Corp.*, elaborated: "The arbitration process functions best when an amicable and trusting atmosphere is preserved . . . . This end is best served by establishing an atmosphere of frankness at the outset, through disclosure by the arbitrator . . . . In many cases the arbitrator might believe the business relationship to be so insubstantial that to make a point of revealing it would suggest he is indeed easily swayed, and perhaps a partisan of that party. But if the law requires the disclosure, no such imputation can arise. And it is far better that the relationship be disclosed at the outset, when the parties are free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity, than to have the relationship come to light after the arbitration, when a suspicious or disgruntled party can seize on it as a pretext for invalidating the award" (393 US at 151).

For all those reasons, and in order to reduce the number of postarbitration cases challenging the impartiality of the arbitrator, the Court of Appeals has expressed a policy of "maximum prehearing disclosure" in arbitration proceedings (34 NY2d at 128). Consequently, an arbitrator should " 'disclose any relationship which raises even a suggestion of possible bias' " (*Mat-*

*ter of Kern [303 E. 57th St. Corp.—Excelsior 57th St.],* 204 AD2d 152, 153 [1994], *lv denied* 84 NY2d 810 [1994], quoting *Matter of Weinrott [Carp],* 32 NY2d 190, 201 [1973]).

The connection between the arbitrator and Toucan and Powers was not so insignificant that he could dispense with disclosure, and therefore the arbitration award must be vacated and a new arbitration conducted. Concur—Tom, J.P., Sullivan, Williams, Buckley and Kavanagh, JJ.